IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| In re: BISPHENOL-A (BPA) | ) | MDL No. 1967 |
| POLYCARBONATE PLASTIC | ) | Master Case No. 08-1967-MD-W-ODS |
| PRODUCTS LIABILITY LITIGATION | ) | |

ORDER AND OPINION ADDRESSING CERTAIN OF DEFENDANTS'
MOTIONS TO DISMISS

Pending are numerous Motions to Dismiss. This Order and Opinion addresses some of those motions. Specifically,

1.  The Motion to Dismiss for Failure to Plead a Legally Cognizable Injury and Lack of Standing (Doc. # 140) is granted in part and denied in part,

2.  The Motion to Dismiss targeting common law and statutory claims of fraudulent and negligent misrepresentation and concealment (Doc. # 144) is granted in part and denied in part,

3.  The Motion to Dismiss the U.C.C. Warranty Claims (Doc. # 152) is granted in part and denied in part, and

4.  The Motion to Dismiss Unjust Enrichment Claims (Doc. # 154) is denied.

I.  BACKGROUND

This case arises from Defendants' use of Bisphenol-A (2, 2-bis (4-hydroxyphenly)-propone), more commonly referred to as "BPA," in baby products. These products include baby bottles, sippy cups, reusable drink containers ("sports bottles"), and containers used to package baby formula.

On August 13, 2008, the Judicial Panel on Multidistrict Litigation ("the Panel") centralized fourteen cases in this district and assigned the case to the undersigned. Since then, the Panel has continued to transfer cases from around the country. As of September 10, 2009, the Panel included a total thirty-eight cases in this litigation. In addition, approximately ten cases have been filed in this District; the Panel does not address intra-District transfers, and on its own the Court has combined those cases with

the multidistrict case.[1]  While the cases to date may not raise claims under the laws of all states, the Court is cognizant of both the nature of multidistrict litigation and the high likelihood that the Panel will include more cases in the future, thereby potentially implicating claims under the laws of most if not all of the states.

The Defendants roughly fall into two categories: the Bottle Defendants and the Formula Defendants.  The Bottle Defendants consist of Evenflo Company, Gerber Products Company, Handi-Craft Company, Nalge Nunc International Corporation ("NNIC"), Playtex Products, Inc., RC2 Corporation, and Philips Electronics North America Corporation (the successor in interest to Avent America, Incorporated).  All but one of the Bottle Defendants make baby bottles, sippy cups and similar products for infants and toddlers; the exception, NNIC, makes sport bottles.  The Formula Defendants consist of Abbott Laboratories, Mead Johnson & Company, and Nestle USA Inc.; these Defendants sell infant formula packaged in metal cans lined with a substance containing BPA.

On December 29, 2008, Plaintiffs filed Amended Class Action Complaints against the Bottle Defendants, and on January 15, 2009, Plaintiffs filed Amended Class Action Complaints against the Formula Defendants.  The Complaints are similar to each other. They all assert, on behalf of every consumer, the following causes of action based on the law where the consumer is located: (1) violation of state consumer protection laws, (2) breach of express warranty, (3) breach of the implied warranties of merchantability and fitness for a particular purpose, (4) intentional misrepresentation, (5) negligent misrepresentation, and (6) unjust enrichment.  Several of the Complaints also assert claims against each Defendant based on the law of the state where that Defendant is

---

[1]Defendants have expressed a desire to challenge the venue in some of the cases filed in this District.  The Court has postponed those issues in the interest of expediency.  If the Court transfers those cases to another District, the Panel will eventually transfer them back as part of the MDL, which will only delay the proceeding as a whole.  The Court can address the venue issues when the other cases are returned to the transferor courts (if that point in time ever arrives).

located.  Plaintiffs have not asserted any product liability claims, nor have they alleged anyone has suffered personal injury as a result of BPA.[2]

Now pending are multiple motions to dismiss.  The Court has grouped four of them together for ease of discussion.  The remaining motions are addressed in separate orders.

## II.  DISCUSSION

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]."  Stodghill v. Wellston School Dist., 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

---

[2]Defendants' concerns about Plaintiffs splitting their claims are minimized due to a unique facet of this case: with the exception of NNIC's products, the consumers/purchasers are not the users of the products, so any personal injury will not be suffered by them.  Parents (and others) bought Defendants' products so they could be used/consumed by infants and toddlers; conversely, infants and toddlers are not likely to have purchased the products.

3

*   *   *

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

A.  Rule 9 and Plaintiffs' Claims of Fraud, Misrepresentation, and Express Warranties

The Court encouraged, then required, Plaintiffs to identify Defendants' statements that form the basis for Plaintiffs' claims of fraud, misrepresentation, and express warranties.  Plaintiffs have declined to do so, and this failing is fatal to several of their claims.

Fed. R. Civ. P 9(b) requires that "the circumstances constituting fraud. . . shall be stated with particularity."   The Eighth Circuit has held that the requirements of Rule 9(b) must be interpreted

> in harmony with the principles of notice pleading . . . . The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct. Thus, a plaintiff must specifically allege the circumstances constituting fraud, . . . including such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.

Abels v. Farmers Commodities Corp, 259 F.3d 910, 920 (8th Cir. 2001) (quotations and citations omitted).  Further, when pleading fraud, a plaintiff is precluded from simply making conclusory allegations.  Commercial Prop. Invs., Inc. v. Quality Inns Int'l, 61 F.3d 639, 644 (8th Cir.1995); see also United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556-57 (8th Cir.), cert. denied, 549 U.S. 881 (2006).

4

On March 13, 2009, the Court issued an Order directing Plaintiffs to file a Statement of Claims. The parties could not agree whether the Statement of Claims needed to include any alleged statements or representations made by Defendants. The Court resolved this dispute in favor of the requirement, explaining

> Regardless of whether Rule 8(a)(2) or Rule 9(b) applies to what Plaintiffs must plead, for purposes of the contents of the Statements of Claims, the Court concludes that Plaintiffs must specify the advertisements or other media that allegedly contain affirmative misstatements, including misrepresentations or express breaches of warranty. Plaintiffs should identify, with as much particularity as possible, the advertisement or other media allegedly containing the misstatement relied on. Plaintiffs are not required to specify the advertisements or other media that allegedly contain misrepresentations by omission.

The Court's rationale was two-fold: first, the Court was cognizant of Rule 9(b)'s requirements and their likely application to at least some of Plaintiffs' claims. Second, even if identification of the statements allegedly forming express warranties was not required by the pleading rules, such identification would eventually be necessary as part of Plaintiffs' Rule 26 disclosures and for prosecution of those claims.

Plaintiffs filed their Statement of Claims on April 13, 2009, and responded to the aforementioned requirement as follows:

> [W]ith respect to Plaintiffs' allegations concerning affirmative misstatements and express breaches of warranty, Plaintiffs have not identified any "advertisements or other media" . . . because Plaintiffs' allegations are not based on any particular representations made in isolated "advertisements or other media." Rather, Plaintiffs' allegations are based on Defendants' overall course of conduct in marketing and selling the products at issue as safe and healthy for use by infants and children. . . . [T]aken as a whole, Defendants' overall course of conduct deceptively conveyed the message that the products at issue are safe and healthy for use by infants and children . . . .

A review of the Complaints fails to reveal any specific representations.

### 1. Fraudulent and Negligent Misrepresentation

5

Defendants contend Plaintiffs have not satisfied Rule 9(b), and the Court agrees insofar as Plaintiffs' claims of misrepresentation – fraudulent and negligent, statutory and common law[3] – are concerned. Plaintiffs' response in this regard is essentially a lengthy charge that Defendants had a duty to disclose information, but this argument misses the point. Plaintiffs' claims of fraudulent/negligent *omission* are not at issue – the focus is on Plaintiffs' claims that Defendants either fraudulently or negligently made materially false statements. Rule 9(b) requires identification of those statements, and Plaintiffs' failure to identify them requires dismissal of these claims.

Plaintiffs also point to isolated paragraphs in their Complaints. The Court has examined all of them.[4] Most of them follow Plaintiffs' theme regarding Defendants' obligations to disclose information but are devoid of any representations alleged to be false. Others are not even statements about the products in question, but general platitudes about a particular Defendant's commitment to safety and quality or general allegations about a particular Defendant's marketing and advertising strategy. These are not affirmative statements that can support a claim for fraud, so these allegations do not satisfy Rule 9(b).[5]

The failure to identify a statement is not only a pleading issue, but is also relevant to Plaintiffs' ability to assert their cause of action. By disclaiming the existence of a

_____

[3]The Court rejects Plaintiffs' intimation that Rule 9(b) does not apply to claims of negligent misrepresentation. See North American Catholic Educational Programming Foundation, Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009). In any event, the Court directed Plaintiffs to identify the statements that give rise to the negligent misrepresentation claims; if there are no statements, then there can be no misrepresentation. Rule 9(b) also applies to claims based on statutes designed to combat fraud. E.g., Joshi, 441 F.3d at 556; Flowers v. Continental Grain Co., 775 F.2d 1051, 1054 (8th Cir. 1985).

[4]The paragraphs are identified on page 15, footnote 22, of Plaintiffs' Suggestions in Opposition (Docket Entry # 212).

[5]It should also be noted that none of the Plaintiffs allege they heard or otherwise received these "misrepresentations," so Plaintiffs have also failed to adequately plead that they relied on them. A person cannot rely on a misrepresentation if the person did not hear the misrepresentation. This is an independent reason to dismiss these claims.

6

statement, Plaintiffs have disclaimed one of the essential elements of a fraud claim. All states require proof of reliance and causation. For a statement to be relied upon and cause a purchaser's injury, the statement must have been heard by the purchaser. Plaintiffs' theory – that the placement of a product in a stream of commerce conveys a representation about the product's safety that can serve as grounds for fraud – has not been demonstrated to exist in any of the fifty states. It might give rise to a warranty claim, and there may be a duty to disclose material facts – but the mere offer to sell a product does not convey an affirmative, explicit representation that can constitute fraud.

The cases cited by Plaintiffs do not support their broad reaching theory. Some states address the existence of "implied representations," but this is only a means to establish a cause of action for fraudulent omissions of material fact. For instance, under Missouri law, the failure to disclose a material fact is an implied representation that the omitted fact does not exist or is not true – giving rise to a fraud claim. See Independent Business Forms, Inc v. A-M Graphics, Inc., 127 F.3d 698, 701 (8th Cir. 1997). Conduct can constitute a representation if it conveys a specific fact: for instance, if a car dealer rolls the odometer back to display 10,000 miles, the car dealer has made a (mis)representation about the miles the car has traveled. In Illinois, "[a] president of a corporation who personally issues stock represents by his conduct that the stock is valid" and "the issuance of coverage by an insurance company in return for a premiums is a tacit representation to the consumer that the coverage has value." Glazewski v. Coronet Ins. Co., 483 N.E.2d 1263, 1266 (Ill. 1985). Allowing the mere sale of products to convey an affirmative representation regarding safety would eviscerate the law of warranty and be contrary to the rationale supporting the limited circumstances in which actions constitute representations. These observations, coupled with Plaintiffs' inability to identify any state that would actually treat Defendants' actions as a "representation," persuade the Court that Plaintiffs' misrepresentation and fraud claims are not cognizable.

Plaintiffs expressly decline to identify any specific statements about the products in question or any statements that any of them actually heard and relied upon. Absent such allegations, Plaintiffs' Complaints do not comport with Rule 9(b) and Plaintiffs have

failed to state claims based on misrepresentation, regardless of whether the claim alleges fraudulent or negligent misrepresentation or if the claim is premised on common law or a statute.

*2.  Express Warranties*

Plaintiffs' claims for breach of express warranties suffers from the same flaw as their fraud claims: Plaintiffs' failure to identify any expressions made by Defendants to them about their products precludes any claim that an express warranty was made or violated.  Rule 9(b) may not require specification of these facts, but the Court's March 13, 2009, Order did.  Regardless, Plaintiffs' response confirms they are not relying on any particular representations to support their claims.  Plaintiffs' position will not satisfy the requirements of an express warranty claim.

Every state has adopted the Uniform Commercial Code (U.C.C.).  While minor differences may exist between the states' various codifications, for ease of discussion the Court will set forth the original version promulgated by the Uniform Law Commissioners.  Section 2-313 of the UCC states as follows:

(1)     Express warranties by the seller are created as follows:

(a)     Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b)     Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c)     Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

8

      (2)     It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Given the absence of any "affirmation of fact or promise," Plaintiffs cannot allege an express warranty was made. They contend it is a question of fact as to whether a warranty was made, but the Court's Order and the Supreme Court's decision in Iqbal required Plaintiff to identify the basis for, if not the content of, the alleged warranty. This requirement is consistent with the expectations of various courts around the country as well as Plaintiff's obligation to set for the elements of its claim. E.g., Johnson v. Brown & Williamson Tobacco Corp., 122 F. Supp. 2d 194, 206 (D. Mass. 2000); Williams v. Beechnut Nutrition Corp., 185 Cap. App. 3d 135, 142 (Cal. App. 1986). No case brought to the Court's attention suggests that statements made in general or to people other than the buyer can create remedies – and as will be discussed below, there are many cases holding to the contrary.

      A related issue is Plaintiffs' inability to allege the supposed warranties became "part of the basis of the bargain." Whether one regards this as reliance or not, the effect is the same: a representation cannot be part of the "bargain" if the other party to the bargain did not know the representation was made. Merely alleging a representation became part of the bargain does not satisfy Iqbal. Plaintiffs have declined to indicate what any of them may have heard in the way of representations and have not provided any other basis for concluding the representations became part of any Plaintiff's bargain with any Defendant. Plaintiffs also have not identified any jurisdiction in which their claims would be valid, and a quick review of the law of various states demonstrates their claims are invalid.

      For a representation to be part of the bargain, it must be known to all parties to that bargain. If one party (here, the buyer) is not aware of the statement, that party cannot claim the statement became a part of the parties' bargain. E.g., McManus v. Fleetwood Enterprises, Inc., 320 F.3d 545, 550 (5th Cir. 2003) ("Although the precise level of reliance required under Texas law to recover for breach of express warranty is

unclear, purchasers . . . who did not read or consider the wardrobe door tag[ ] cannot be said to have relied on the allegedly misleading wardrobe tag to *any* extent.") (emphasis in original); Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 171 F.3d 818, 825 (3d Cir. 1999) ("This Court has held that a promise is presumed to be a 'part of the basis of the bargain' under New Jersey law once the buyer has become aware of the affirmation of fact or promise."); Hendricks v. Callahan, 972 F.2d 190, 193-94 (8th Cir. 1992) (discussing Minnesota law); Owens-Corning Fiberglas Corp. v. Sonic Development Corp., 546 F. Supp. 533, 541 (D. Kan. 1982) (Holding statements made to people other than the buyer did not create a warranty because "[i]n Kansas, it is necessary to prove both that a express warranty was made, and that it was relied upon by the buyer."); Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc., 24 F.3d 125, 131 (10th Cir. 1994) (under Utah law, statements made to FAA could not form warranty with buyer when buyers did not know of statements and could not have acted or relied upon them); Torres v. Northwest Eng'g Co., 949 P.2d 1004, 1015 (Hi. 1997) ("[A] plaintiff claiming a breach of express warranty based on an advertisement contained in a catalogue or brochure would normally have to prove, at a minimum, that he or she read, or at least was aware of, the catalogue or brochure."); Ciba-Geigy Corp. v. Alter, 824 S.W.2d 136, 146-47 (Ark. 1992) ("An affirmation of fact must be part of the basis of the parties [sic] bargain to be an express warranty.  When a buyer is not influenced by the statement in making his or her purchase, the statement is not a basis of the bargain."); Coryell v. Lombard Lincoln-Mercury Merkur, Inc., 544 N.E.2d 1154, 1159 (Ill. Ct. App. 1989) ("[T]he buyer must show reliance on the seller's representation in order for an express warranty to exist."); Phillips v. Ripley & Fletcher Co., 541 A.2d 946, 950 (Me. 1988) ("[T]he requirement that the affirmation become part of the 'basis of the bargain' is meant to continue the uniform sales act requirement that the purchaser must show reliance on the affirmation in order to make out a cause of action for breach of warranty."); Baughn v. Honda Motor Co., 727 P.2d 655, 669 (Wash. 1986) ("Although the UCC does not require a plaintiff to show reliance on the manufacturer's statement, he or she must at least be aware of such representations to recover for their breach."); Interco Inc. v. Randustrial Corp., 533 S.W.2d 257, 262 (Mo. Ct. App. 1976) ("A

brochure, catalogue or advertisement may constitute an express warranty.  However, the catalogue, advertisement or brochure must have at least been read.").  Of course, this assumes Plaintiffs can point to the statement that allegedly became part of the bargain – which they also have not done.  For these reasons, Plaintiffs' claims for breach of express warranties must be dismissed.

## B.  Rule 9 and Plaintiffs' Claims of Fraudulent Omissions

The March 13, 2009, Order did not impose particular requirements for Plaintiffs' claims of fraudulent omissions.  Keeping in mind the common-sense view of Rule 9 advocated by the Eighth Circuit in <u>Abels</u>, the Court deemed it unnecessary to require Plaintiffs to specifically identify who failed to disclose information and each occasion upon which they failed to disclose it.  The response to such a requirement would be nearly infinite and of little practical use.  Rule 9 is satisfied with respect to a claim of fraudulent omissions if the omitted information is identified and "how or when" the concealment occurred.  <u>Cf</u>. <u>Great Plains Trust Co. v. Union Pacific R. Co.</u>, 492 F.3d 986, 996 (8th Cir. 2007).  With respect to their claims premised on omitted or concealed facts, Plaintiffs have satisfied Rule 9.

Defendants argue the claims predicated on omissions must be dismissed because they had no duty to disclose the information.  They first contend they had no duty because the information about BPA's presence in their products and the scientific tests performed were a matter of public knowledge.  The Court is not convinced this is true, as there is no indication that consumers were told the chemical composition of the products purchased from Defendants.[6]  Regardless, at best Defendants have demonstrated the existence of a duty depends on the resolution of disputed facts.  All states permit a fraud claim based on concealment or nondisclosure only if the law recognizes a duty to speak.  The duty to speak can exist in a variety of circumstances

---

[6]While Plaintiffs have identified public statements made by Defendants about BPA, these statements came after the media reported criticisms of the FDA's findings – and, thus, after Plaintiffs' purchasing decisions were made.

that are not relevant here (for instance, the existence of a fiduciary duty). However, all jurisdictions surveyed create a duty to disclose material facts that are more readily known by one side of the transaction. E.g., Owen v. General Motors Corp., 533 F.3d 913, 920 (8th Cir. 2008) (Under Missouri law, "[s]ilence becomes misrepresentation only when there is a duty to speak, such as when one of the parties has superior knowledge or information not within the fair and reasonable reach of the other party.") (quotation omitted); Baer Gallery, Inc. v. Citizen's Scholarship Foundation of Am., Inc., 450 F.3d 816, 821 (8th Cir. 2006) (Under Minnesota law, a duty to disclose exists, "where one party has special knowledge of material facts to which the other party does not have access."); Brass v. American Film Tech., Inc., 987 F.2d 142, 152 (2d Cir. 1993) (Applying New York law and concluding that if the court "[takes] the facts alleged in the amended complaint as true, we believe that AFT was duty bound under the superior knowledge rule to disclose to Brass the restrictions on alienability."); First Alabama Bank of Montgomery v. First State Ins. Co., 899 F.2d 1045, 1056 (11th Cir. 1990) (Under Alabama law, "[w]hen the accused has superior knowledge or expertise not shared by the plaintiff, the obligation to disclose is compelling. . . . In order to determine whether a duty to disclose exists, we must examine the facts of each individual case . . . ."); Azar v. Prudential Ins. Co. of Am., 68 P.3d 909, 928 (N.M. Ct. App. 2003); Smalls v. Blueprint Development, Inc., 497 S.E.2d 54, 56 (Ga. Ct. App. 1998); Silva v. Stevens, 589 A.2d 852, 857-58 (Vt. 1991) (noting the existence of a "duty to speak based on superior knowledge" and that the "[t]he jury could find the requisite superior knowledge here where the facts were largely historical and plaintiffs had limited ability to determine them."). Defendants cite cases suggesting that Plaintiffs are charged with information that would be known to diligent consumers – but the Court cannot say, as a matter of law, that diligent consumers would (1) know BPA was in the products they purchased or (2) know the information regarding BPA on file with the FDA.

Defendants also contend they had no duty to speak because "whether BPA is safe" is a matter of opinion, and on this issue there are divergent opinions. Defendants view the matter rather generally. Plaintiffs allege Defendants failed to reveal material facts, such as BPA's presence in their products and the attendant health risks. Plaintiffs

12

also insinuate Defendants did not reveal information it possessed about criticisms of the reports relied on by the FDA.  Plaintiffs essentially argue that Defendants should have allowed them to decide whether to assume the risk of erroneous findings by the FDA before buying products for their children that contained a potentially harmful substance.  The underlying facts, if true, could be found by a jury to be more readily known by Defendants, and thereby demonstrate Defendants were obligated to reveal them.

The facts could also be found to be material.  No citation is necessary to demonstrate that a jury could conclude information about the safety risks associated with allowing infants and toddlers to put cups, bottles and similar products in their mouths is material to a consumer's buying decision.

C.  Particular States' Consumer Protection Statutes

Defendants contend Plaintiffs' claims under various state consumer protection statues are not cognizable.  Specifically, they argue
- Claims under Arkansas, Georgia, Illinois, and Ohio statutes are not cognizable because Defendants' actions were authorized by a federal agency
- Claims under Arkansas, Illinois, Kansas, Ohio, and Washington statutes are not cognizable because those states permit the use of BPA
- Claims under California statutes are barred by a "safe harbor" in that statute

The Court will defer consideration of these arguments because the Court's handling of these issues may affect, or be affected by, its resolution of Plaintiffs' requests for class certification.  A ruling in Defendants' favor will not affect all Plaintiffs, so deferring consideration will not prejudice Defendants.

D.  Implied Warranties

As before, and with due recognition of Defendants' arguments regarding differences between the states, for ease of discussion the Court will set forth the relevant U.C.C. sections.  Section 2-314 establishes the implied warranty of

13

merchantability. A merchant in goods of a particular kind warrants, among other things, that the goods "are fit for the ordinary purposes for which goods are used." Section 2-314(2)(c). Section 2-315 establishes the implied warranty of fitness for a particular purpose:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the good shall be fit for such purpose.

Logically, the seller has reason to know that a buyer might use the item "for the ordinary purposes for which such goods are used," so the implied warranty of fitness for a particular purpose has no particular role when the good is used for its ordinary purpose. At best, it would be redundant. Indeed, Comment 2 to section 2-315 demonstrates the distinct situations in which the warranties apply:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Plaintiffs contend, and the Court agrees, that a particular sale can include both implied warranties. For this to happen, the requirements for both warranties must be satisfied. The difficulty in the present case is divining the particular purpose – separate and apart from the ordinary purpose – for which Plaintiffs were using Defendants' goods. For instance, the ordinary purpose for baby bottles can be described in a myriad of ways, but they are generally used to allow babies and toddlers to drink liquids. Plaintiffs theoretically may assert a claim that the baby bottles were not fit for this purpose. However, Plaintiffs cannot rely on this ordinary purpose to support a claim that there was a warranty of fitness for a particular purpose; they must point to some other purpose that is not "ordinary" in order to support their claim. Plaintiffs have not

14

Case 4:08-md-01967-ODS   Document 261   Filed 11/09/09   Page 14 of 23

suggested any purpose to which the goods were put, so they cannot have a claim premised on a breach of the implied warranty of fitness for a particular purpose.

This leaves Plaintiffs' claims for breach of the implied warranty of merchantability. Defendants posit a variety of arguments premised on the unique characteristics of various states' laws. These arguments include claims of lack of privity, untimeliness, and failure to provide notice. None of these arguments apply universally to all claims so, as with the individualized issues regarding the various states' consumer protection statutes, the Court will defer consideration of these issues until Plaintiffs' request to certify a class is considered.

### E. Unjust Enrichment

On a general level, the parties agree that unjust enrichment allows a party to recover benefits conferred on another party when retention of that benefit by the other party is unjust. Individual states undoubtedly describe the cause of action in various ways, and may even impose requirements that others do not. Defendants seek dismissal of all unjust enrichment claims. The request is denied.

Many of Defendants' arguments depend on unique aspects of various states' laws. For instance, based on the same arguments advanced regarding some states' consumer protection statutes, see page 13, infra, Defendants contend there could be no unjust actions on their parts. As with the other arguments that do not apply universally to all Plaintiffs, the Court will defer consideration.

Some of Defendants' arguments do apply universally. Defendants contend there can be no unjust enrichment because Plaintiffs received what they bargained for. They also contend there is no equitable reason to bestow Plaintiffs with a remedy because Defendants did not do anything inequitable or unjust. These are factual matters that the Court cannot resolve while ruling on a motion to dismiss.

### F. Injury/Damage

15

Defendants contend Plaintiffs' claims should be dismissed because they have not sufficiently alleged they suffered damage. This issue is presented alternatively as a failure to state a claim and as a jurisdictional defect. The Court elects to treat the issue as an alleged failure to state a claim because this is how the Eighth Circuit has treated the matter.[7]

Defendants characterize this case as a "no-injury" products liability case. The Court is not persuaded Defendants' characterization is entirely correct, but the general propositions regarding damages have some applicability in this case. For ease of discussion, the Court will focus on the cases decided by the Eighth Circuit.

In Briehl v. General American Motors Corp., the plaintiffs contended defendants designed a defective brake system but did not assert any product liability claims. Instead, based on the alleged defect, the plaintiffs asserted claims for fraudulent misrepresentation and concealment, breach of warranty, and violation of consumer protection statutes. 172 F.3d 623, 625-26 (8th Cir. 1999). "The Plaintiffs do not allege that the ABS is incapable of stopping the vehicles or that ABS has violated any national safety standards [and have] explicitly disclaimed any intent to seek recovery for personal injuries or property damage suffered, or which may be suffered, by any class member." Id. at 626. The Court of Appeals upheld the dismissal of the case, holding that when "a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies. Since the Plaintiffs have failed to allege any manifest defect and their vehicles perform in a satisfactory manner," dismissal was proper. Id. at 628. The plaintiffs insisted they had been damaged, and "set their damages as the difference between a vehicle with the ABS system that they expected and the system that is actually installed in each of their vehicles." Id. at 629. This theory was deemed "insufficient as a matter of law" and the dismissal was upheld. Id.

---

[7]The only effect of this decision is that the Court would be required to address this issue first if it is treated as a jurisdictional matter. The end result is the same.

In O'Neil v. Simplicity, Inc., the plaintiffs purchased a crib with a side that could be lowered so a baby did not have to be lifted to the top of the crib to be placed in it. This was important to the plaintiffs because one of them was unable to lift her grandchildren to the crib's full height. 574 F.3d 501, 502 (8th Cir. 2009). The Consumer Product Safety Commission and the manufacturer announced a voluntary recall after it was discovered that the crib had "a hardware defect that made it possible for the drop-side to detach from the crib, creating a dangerous gap in which a child could get caught." Id. Sixty-six incidents, including three deaths and seven non-fatal injuries, had been reported. Id.

The recall did not entitle consumers to return the cribs. Instead, the manufacturer offered a repair kit free of charge that locked the side in place so it could not be lowered. Id. The plaintiffs brought suit under various state and federal theories based on the premise that "defendants' cribs are defective because the drop-side can separate from the crib frame." Id. at 503. Significantly, the plaintiffs did not allege that their crib had experienced such a separation or that it suffered from any other defect. The plaintiffs attempted to save their claim by arguing they had not received the benefit of the bargain: they bought the crib precisely because its side could be lowered, and now they were unable to safely lower the side. Using the repair kit would alleviate the safety issue, but would also deprive them of the feature that motivated them to buy the crib in the first place. In rejecting the plaintiffs' argument, the Court of Appeals focused on the defect – separation between the side and the crib – and noted the defect was not manifested in the plaintiffs' crib.

> The problem with this argument is that, because the O'Neils' crib has not exhibited the alleged defect, they have necessarily received the benefit of their bargain. The O'Neils purchased a crib with a functioning drop-side and that crib continues to have a functioning drop-side. Their bargain with Simplicity and Graco did not contemplate the performance of cribs by other consumers.

Id. at 504.

Application of these cases depends on the circumstances of each Plaintiff. In one group are Plaintiffs who learned about BPA's presence and potential effects and either still have the goods or subsequently replaced or disposed of them. Defendants' argument does not apply to this category, and their cases are distinguishable. In the cases cited, only a *potential* defect existed. In Briehl, there was no "manifest defect" and only a potential that a person's brakes would be misused. In O'Neil, there was only the potential for the side to separate from the crib. In the present case, there is not merely a potential for BPA being in the products – there is no doubt that BPA was present. This, in fact, is the key for this category: not that someone was injured, but that consumers were not told of BPA's presence and the corresponding health risks. Perhaps no physical injuries resulted – but a fraud claim does not depend on a showing of physical injury.

Although it may not appear so at first, these Plaintiffs are comparable to those in Coghlan v. Wellcraft Marine Corp., a Fifth Circuit case cited approvingly in O'Neil. "In Coghlan, the plaintiffs were promised an all-fiberglass boat, but received a boat made of both fiberglass and plywood." O'Neil, 574 F.3d at 504. "The only damage sought by the Coghlans [was] the benefit of their bargain with Wellcrat, or the difference in value between what they were promised, an all fiberglass boat, and what they received, a hybrid wood-fiberglass boat." Coghlan, 240 F.3d 449, 452 (5th Cir. 2001). In distinguishing the case from the prototypical "no-injury" product case, the Fifth Circuit explained

> the Coghlans assert they were promised one thing but were given a different, less valuable thing. The core allegation in a no-injury product liability class action is essentially the same as in a traditional products liability case: the defendant produced or sold a defective product and/or failed to warn of the product's dangers. The wrongful act in a no-injury products suit is thus the placing of a dangerous/defective product in the stream of commerce. . . . The striking feature of a typical no-injury class is that the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it. Therefore, the plaintiffs in a no-injury products liability case have not suffered any physical harm or out-of-pocket economic loss.

Id. at 455 n.4 (footnote cited with approval in Coghlan, 240 F.3d at 504). Coghlan is based on representations made to the buyer. Although no affirmative representations are at issue here, this case is comparable to Coghlan because the combination of concealment and a duty to divulge substitutes for the representation. E.g., Reis v. Peabody Coal Co., 997 S.W.2d 49, 61 (Mo. Ct. App. 1999); see also Restatement (Second) of Torts § 550 (treating concealment of material fact the same as an affirmative statement that the fact in question does not exist).

The claims of Plaintiffs in this category do not depend on proving the products are defective. It is true that, in a general sense, Plaintiffs' claims revolve around "safety" in that the allegedly material facts that were concealed relate to that issue. However, Plaintiffs' claims are not predicated on proving the elements of any jurisdiction's product liability laws.

Plaintiffs in this category have suffered damage, and to hold otherwise would lead to absurd results. Suppose a food seller knew its product contained a poison that has a 50% chance of killing the person eating it. Suppose further that this fact is divulged to the buyer after he purchases the product. Must the buyer eat the food in order to have a claim for fraudulent concealment or breach of warranty? Clearly not. The buyer has been damaged regardless of whether he replaces or disposes of the product because, either way, he has paid the seller for a product that he would not have purchased had he known the poison was present, and has received no use from the product. The poison may not injure him, but the condition complained of – poison's presence – is known to exist. Similarly, the Plaintiffs in this category purchased a product they allege they would not have purchased had they known the true facts. Now that they know the true facts, they are unwilling to risk allowing their children to use the product. They cannot obtain the intended bargain or benefit from the goods, so they incurred damages.[8]

---

[8]Admittedly, it would be possible for a Plaintiff to have purchased a bottle or other product so long ago that a jury might decide they already received "full value" from the item's use, making that Plaintiff's damages zero. These are determinations of fact, and the Court cannot declare, as a matter of law, that any Plaintiff still possessing the

The second category of Plaintiffs consists of those who disposed of or used the products before learning about BPA. Their situation is different because they received all the benefits they desired and were unaffected by Defendants' alleged concealment. While they may contend they would not have purchased the goods had they known about BPA, these Plaintiffs received 100% use (and benefit) from the products and have no quantifiable damages.

In this instance, it is Plaintiffs' position that leads to absurd results. Altering the hypothetical from above, suppose that the buyer ate the food, was unaffected, and then was told that the food contained poison. Clearly, the buyer would not have purchased and eaten the food poison had he known about the poison – but even ignorant of the true facts he safely consumed the food. The food fulfilled its originally anticipated function by providing the nutrition and satisfaction value the buyer expected, so the buyer obtained the full anticipated benefit of the bargain. While he may not have paid the asking price, offset against this is the fact that he received the benefits he paid for – leaving him with no damages. In the present case, consumers purchased products for use by infants and toddlers. They would not have purchased those products had they known the true facts, but they obtained full use of those products before learning the truth: the formula was consumed or the children grew to an age where they did not use bottles and sippy cups, so they were discarded. These consumers thus obtained full value from their purchase and have not suffered any damage.

This discussion does not apply to the unjust enrichment claims. Generally, the measure of damages for unjust enrichment is the value of the benefit conferred on the defendant. E.g., Lindquist Ford, Inc. v. Middleton Motors, Inc., 557 F.3d 469, 477 (7th Cir. 2009) (In Wisconsin, "[t]he measure of damages under unjust enrichment is limited to the value of the benefit conferred on the defendant; any costs the plaintiff may have incurred are generally irrelevant."); Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 66 (1st Cir. 2009) (Under Massachusetts law, "the appropriate measure of damages should be an approximation of the value of the

products in question have already received full value from them.

benefit" the plaintiff conferred on the defendant."); <u>ATACS Corp. v. Trans World Communications, Inc.</u>, 155 F.3d 659, 669 (3d Cir. 1998) (Pennsylvania law); <u>Klein v. Arkoma Production Co.</u>, 73 F.3d 779, 786 (8th Cir. 1996) (Under Arkansas law, "[t]he measure of damages for unjust enrichment is the amount of unfair gain received by those unjustly enriched."); <u>Hollifield v. Monte Vista Biblical Gardens, Inc.</u>, 553 S.E.2d 662, 669 (Ga. Ct. App. 2001). Even for those purchasers who completely consumed the products they bought, a jury could conclude Defendants intentionally concealed material facts and are thus not entitled to the benefits conferred by the purchasers. To be sure, the extent of any benefit received by Plaintiffs would be a factor in determining whether and to what extent Defendants' retention of money is unjust – but this is a matter for a jury to resolve. Therefore, the unjust enrichment claims are not affected by the Court's analysis.

## III. CONCLUSION

The combination of these rulings means the following claims have been dismissed:

• From the Evenflo Complaint (Case No. 08-1967, Doc. # 69) – Counts I, II, V and VI are dismissed insofar as they depend on misrepresentations (as opposed to omissions), Count III is dismissed in its entirety, and Count IV is dismissed insofar as it asserts a claim of breach of the implied warranty of fitness for a particular purpose.

• From the Gerber Complaint (Case no. 08-1967, Doc. # 70) – Counts I, IV and V are dismissed insofar as they depend on misrepresentations (as opposed to omissions), Count II is dismissed in its entirety, and Count III is dismissed insofar as it asserts a claim of breach of the implied warranty of fitness for a particular purpose.

• From the Nalge Nuncc Complaint (Case No. 08-0996, Doc. # 1) – Counts I, IV and V are dismissed insofar as they depend on misrepresentations (as opposed to omissions), Count II is dismissed in its entirety, and Count III is dismissed

insofar as it asserts a claim of breach of the implied warranty of fitness for a particular purpose.

- From the Avent America/Phillips Electronics Complaint (Case No. 08-0997, Doc. # 1) – Counts I, II, III, VI and VII are dismissed insofar as they depend on misrepresentations (as opposed to omissions), Count IV is dismissed in its entirety, and Count V is dismissed insofar as it asserts a claim of breach of the implied warranty of fitness for a particular purpose.

- From the RC2 Complaint (Case No. 08-0998, Doc. # 1) – Counts I, II, V and VI are dismissed insofar as they depend on misrepresentations (as opposed to omissions), Count III is dismissed in its entirety, and Count IV is dismissed insofar as it asserts a claim of breach of the implied warranty of fitness for a particular purpose.

- From the Playtex Complaint (Case No. 08-0999, Doc. # 1) – Counts I, II, V and VI are dismissed insofar as they depend on misrepresentations (as opposed to omissions), Count III is dismissed in its entirety, and Count IV is dismissed insofar as it asserts a claim of breach of the implied warranty of fitness for a particular purpose.

- From the Handi-Craft Complaint (Case No. 08-1000, Doc. # 1) – Counts I, II, V and VI are dismissed insofar as they depend on misrepresentations (as opposed to omissions), Count III is dismissed in its entirety, and Count IV is dismissed insofar as it asserts a claim of breach of the implied warranty of fitness for a particular purpose.

- From the Nestle Complaint (Case No. 09-0036, Doc. # 1) – The first Count III[9] and Counts I, II, V and VI are dismissed insofar as they depend on misrepresentations (as opposed to omissions), the second Count III is dismissed in its entirety, and Count IV is dismissed insofar as it asserts a claim of breach of the implied warranty of fitness for a particular purpose.

---

[9]This Complaint mistakenly has two Counts identified as "Count III."

- From the Abbot Laboratories Complaint (Case No. 09-0037, Doc. # 1) – Counts I, II, V and VI are dismissed insofar as they depend on misrepresentations (as opposed to omissions), Count III is dismissed in its entirety, and Count IV is dismissed insofar as it asserts a claim of breach of the implied warranty of fitness for a particular purpose.

- From the Mead Johnson Complaint (Case No. 09-0038, Doc. # 1) – Counts I, II, V and VI are dismissed insofar as they depend on misrepresentations (as opposed to omissions), Count III is dismissed in its entirety, and Count IV is dismissed insofar as it asserts a claim of breach of the implied warranty of fitness for a particular purpose.

In addition, *all* claims except for unjust enrichment must be dismissed with respect to those Plaintiffs who no longer possessed any of Defendant's goods at the time they learned about BPA and its potential health effects. Of course, the Court does not know which Plaintiffs this edict applies to, but this can be determined at a later time. Finally, consideration of certain arguments that focus on the applicability of a particular state's law have been deferred.

IT IS SO ORDERED.


                                                      /s/ Ortrie D. Smith
                                                      ORTRIE D. SMITH, JUDGE
DATE: November 9, 2009                                UNITED STATES DISTRICT COURT

23