IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| In re: BISPHENOL-A (BPA) | ) | MDL No. 1967 |
| POLYCARBONATE PLASTIC | ) | Master Case No. 08-1967-MD-W-ODS |
| PRODUCTS LIABILITY LITIGATION | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION TO COMPEL

On May 14, 2010, Plaintiffs' filed a Motion to Compel as permitted by the Court's May 4, 2010 Order. Defendants responded on the same day (also as directed by the Court's Order). A hearing was held on May 19, 2010. After considering the parties' argument, the Court grants in part and denies in part Plaintiffs' motion (Doc. # 340).

I.

A brief recounting of this case's history is necessary to place the issues in perspective. In transferring cases to this district, the MDL Panel noted "[t]hese actions share factual questions arising out of allegations that various defendants manufactured, sold or distributed polycarbonate plastic bottle products containing Bisphenol-A without disclosing its possible harmful effects." Transfer Order at 1. Since then, the MDL Panel has twice declined to expand the scope of this case. On Feburary 3, 2010, the MDL Panel declined to include cases filed against SIGG Switzerland (USA), Inc., because those cases "involve[d] parties, facts and theories different from those" included in this case. SIGG was not a party to this action, and its product – reusable aluminum water bottles – were deemed different from the plastic bottles that were originally the subject of this litigation. On February 4, 2010, the MDL Panel declined to transfer two cases involving reusable metal water bottles manufactured by Gaiam, Inc. even though "all actions concern products that are alleged to contain BPA" because the cases against Gaiam "involve[d] parties, facts and theories different from those in" this case. It is thus clear that the MDL Panel did not intend this litigation to be a universal, all-encompassing case involving all products (or even all food-related products) containing BPA.

In the interest of meaningful and steady progress, the Court made early efforts to define the scope of this litigation. At the Court's direction Plaintiffs were required to file a Statement of Claims that identified, for each Plaintiff, the name or description of the products purchased. See Order dated February 13, 2009 (Doc. # 88). The Statement of Claims has not been amended. The parties agreed (and the Court accepted) that March 9, 2010 would be the deadline for amending the parties' claims or adding new parties. That date passed with no amendments. Meanwhile, in November 2009 the Court ruled on Defendants' Motions to Dismiss. The Court noted that none of the Plaintiffs "asserted any product liability claims, nor have they alleged anyone has suffered personal injury as a result of BPA." Order dated November 9, 2009 (Doc. # 261). The Court dismissed claims premised on misrepresentation (including express warranty claims) and the implied warranty of fitness for a particular purpose. Unjust enrichment and state statutory claims remained. "In addition, Plaintiffs suing a Bottle Defendant and who still possessed any of the goods at the time they learned about BPA and its potential health effects also may assert claims for fraudulent and negligent omissions of material fact (under common law or statute) and breach of implied warranty of merchantability." Order dated November 9, 2009 (Doc. # 264).

II.

The first issue relates to scope – both in terms of products and time. First, Plaintiffs suggest they may expand the products at issue in this suit and the discovery is justified to determine the BPA content of other products (such as plastic eating utensils, plastic plates, and other food-contact items). However, the time for amending the pleadings has passed and adding products will also necessitate adding more defendants because the Defendants currently in the case do not represent all of the manufacturers of these additional products. Consistent with the Court's observation that this case was not intended to – and will not – become an all-encompassing "BPA case," the Court discerns no need or justification for starting the discovery process over at the beginning as Plaintiffs identify more plastic products. Finally, the Court rejects

Plaintiffs' argument that the proposed class definition justifies broader discovery. A broadly-worded and unapproved class definition is not the appropriate guide for the scope of discovery. The claims in this case involve only the products identified in the Statement of Claims.[1]

Plaintiffs also argue that information about other products is needed to identify why Defendants chose to make products out of polycarbonate or with BPA, the availability and pros/cons of alternatives, and why they chose to simultaneously make competing product lines without BPA. While the burden of complying with such requests might be justified in a products liability case, the burden is not justified in this case because the purposes identified by Plaintiffs have no relation to the remaining claims. For instance, Plaintiffs contend that "if Defendants were aware of potential adverse side effects from BPA . . . but simply discounted those side effects for economic reasons, that is clearly relevant to Plaintiffs' claims." Motion to Compel (Doc. # 340) at 3. The Court disagrees – Defendants' motivations might be relevant in a products liability case, but they have no bearing on the legal claims asserted in this case. In another example proffered during the hearing, Plaintiffs suggested it was important to discover why certain Defendants made competing bottles out of glass. Again, this information will not lead to evidence that is relevant to the claims Plaintiffs have made. The reasons for a Defendant's decision to make a glass baby bottle at the same time it made one with BPA will not have any bearing on whether BPA's presence was a material fact that should have been disclosed under common law or statute.[2]

This discussion also impacts the temporal issues. Given the nature of the claims, the Court is not persuaded that the burden involved in providing non-health

---

[1]The Court leaves for another day whether a Plaintiff may later amend his or her Complaint to include a product identified by another Plaintiff. Such an amendment would not necessitate the inclusion of other parties, nor would it expand the scope of discovery to new and unanticipated products.

[2]This statement is true *unless* the Defendant's decision was based on health or safety concerns related to BPA – in which case, Defendants have already agreed (and the Court holds) that the information is discoverable.

3

related information for the products at issue from more than five years in the past is justified.

Defendants are directed to provide:

- all information about the health effects of BPA, regardless of the date of that information and regardless of the product, and
- all other information about the products identified in the statement of claims dating back five years before the lawsuits were filed.

### III.

The next issue involves Defendants' recent marketing of products as "BPA Free." Plaintiffs seek to learn why these marketing decisions were made. The Court agrees that discovery in this area is reasonably calculated to lead to the discovery of admissible evidence. In particular, Defendants have suggested that information about BPA was disclosed or otherwise available to consumers. However, there is a stark contrast between the manner in which Defendants have announced the *absence* of BPA and the manner in which they announced its *presence*. Plaintiffs are entitled to explore this issue and ascertain Defendants' knowledge and beliefs about appropriate and effective methods of communicating health and safety information to consumers.[3] The Court also notes that the time frame involved in this area is rather limited and the burden to Defendants is slight.

### IV.

---

[3]An interesting question is posed if Defendants concede this element of Plaintiffs' claims by making a binding admission that information about BPA's presence and potential health effects was neither available nor revealed to consumers. Theoretically, this would obviate the need for this information and leave only the issue of materiality for further evaluation.

The final issue involves the manner in which Defendants have produced documents. Rule 34(b)(2)(E) states that, unless the parties stipulate or the court orders otherwise, a party must produce documents as they are kept in the ordinary course of business "or must organize and label them to correspond to the categories" in the request for production. The rule also states that electronically stored information must be produced in the form it is maintained "or in a reasonably usable form . . . ." On April 7, 2009, the Court issued an Order establishing a Document Production Protocol (Doc. # 114). The Order is largely the agreement of the parties endorsed by the Court; while some disputes were resolved, the document is primarily the product of the parties' agreement. Paragraph 4 specifies the manner for producing paper documents, electronic information, and other documentary or tangible evidence.

Plaintiffs contend Defendants have not obeyed Rule 34(b)(2)(E) but are careful to avoid claiming Defendants have failed to produce the information in the manner in which it is maintained in the ordinary course of business.[4] Instead, Plaintiffs contend they do not know whether this is the case because Defendants have not presented proof that the documents were produced in the manner in which they are kept in the ordinary course of business. The Court concludes the parties essentially bargained for a particular methods of document production. They also bargained for the exchange of certain information about the documents. In doing so, the parties did not agree to require proof confirming that information was produced in the manner it was maintained. Regardless of whether such proof is required by Rule 34(b)(2)(E), the parties' agreement and the Court's subsequent order supplanted the Rule's requirements. The Court denies Plaintiffs' request for relief.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: May 26, 2010　　　　　　　　　UNITED STATES DISTRICT COURT

---

[4] Plaintiffs also do not contend Defendants violated the Document Production Protocol.

5