IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| In re: BISPHENOL-A (BPA) | ) | MDL No. 1967 |
| POLYCARBONATE PLASTIC | ) | Master Case No. 08-1967-MD-W-ODS |
| PRODUCTS LIABILITY LITIGATION | ) | |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL

Pending is Plaintiffs' Motion to Compel, which relates to the Rule 30(b)(6) deposition of the Juvenile Products Manufacturers Association (JPMA). The Court has reviewed the materials Plaintiffs submitted for *in camera* review, as well as supplemental briefs submitted at the Court's request. Plaintiffs' motion (Doc. # 569) is granted in part and denied in part.


## I.  BACKGROUND


On June 24, 2010, Plaintiffs filed a Motion to Compel, asking the Court to direct JPMA to respond to discovery requests. JPMA did not respond, and on July 9, 2010, the Court issued an Order to Show Cause, with directions that the order be mailed to JPMA's counsel and to JPMA itself. JPMA did not respond to the Order to Show Cause, and on August 3, 2010, the Court granted Plaintiffs' Motion to Compel and directed JPMA to produce the requested documents.

JPMA produced over 2,000 responsive documents. JPMA's Executive Director, Michael Dwyer, oversaw the collecting of documents. The documents were placed in electronic folders; communications with JPMA's attorney, Frederick Locker, were placed in a separate folder titled "Locker." The folders were then forwarded to Locker so he could "handle the production appropriately." Dwyer Affidavit, ¶ 6. Locker apparently sent all the documents – including those in the Locker folder – to Plaintiffs. Meanwhile, Plaintiffs were concerned that some documents had been withheld on privilege grounds.

Assurances were sought, and Locker represented that no documents had been withheld.

Plaintiffs deposed Dwyer on December 1, 2010.  During the deposition, Dwyer was asked about an e-mail he sent to Locker.  Locker objected on the ground of attorney-client privilege and directed Dwyer not to answer.  Locker also requested the e-mail's return; it appears Plaintiff's counsel did not return the e-mail in question, although Defendants' attorneys returned their copies to Locker.  There were also lengthy discussions about whether the privilege had been waived.  This sequence of events repeated itself several times during Dwyer's deposition.

Plaintiffs seek an Order reopening Dwyer's deposition and directing that Dwyer respond to questions about documents JPMA produced but claims are privileged.  In making this request, Plaintiffs' counsel emphasizes that he did not ask all the questions he wanted to ask about all of the documents in the Locker folder because he realized the effort was futile.  JPMA seeks to vindicate its assertion of privilege by asking that the motion be denied and that Plaintiffs be ordered to return the allegedly privileged documents.

II.  DISCUSSION

A.  Waiver Issues

As an initial matter, the Court addresses the effect of its August 2010 Order compelling production of responsive documents.  This Order has been mentioned by Plaintiffs in support of their position that the privilege has been waived, because (1) JPMA did not assert a privilege before the Order was issued and (2) the Order does not make an exception for privileged documents.  However, the Court never intended to obviate any applicable privileges.

Plaintiffs also contend the production of the documents constituted a waiver, because the act of production revealed them to a third-party.  JPMA contends the disclosure was inadvertent, and the Court agrees.  The Eighth Circuit has held that

Missouri law[1] prescribes "a five-step analysis of the unintentionally disclosed documents to determine the proper range of privilege to extend." Gray v. Bicknell, 86 F.3d 1472, 1483-84 (8th Cir. 1996).

> These considerations are (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document productions, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error.

Id. at 1484. In applying these factors, the Court must keep in mind that the privilege belongs to JPMA – not Locker. Therefore, JPMA's actions are more relevant, and the Court should not lightly permit Locker's actions to constitute waiver. This observation is critical in this case, because the Court believes that JPMA acted as any client would – it gathered documents that were responsive to the request and sent them to counsel. In doing so, it flagged those that might be privileged for its attorney to review. Any other course would have required JPMA to decide, on its own, what was privileged. Unfortunately, it appears that JPMA's counsel did not conduct the review: instead, it forwarded all the documents to Plaintiffs. Given the large number of documents produced and the relatively small number of documents in question, the Court cannot fault JPMA for its actions. Therefore, the first three and the last factor augur in JPMA's favor. The fourth factor weighs in favor of Plaintiffs, but in this case the Court does not believe the timing of JPMA's objection is significant enough to outweigh the other factors.

---

[1] "In diversity actions, state law determines the existence and scope of attorney-client privilege." Gray v. Bicknell, 86 F.3d 1472, 1482 (8th Cir. 1996). No party suggests which state's law should govern. JPMA specifically invokes Gray, which addressed Missouri law – so it seems content to allow Missouri law to govern. Plaintiffs have not suggested a different course.

<u>B.  Scope of the Privilege</u>

The Court next must ascertain which, if any, of the inadvertently-produced documents are privileged.  Ordinarily, a party seeking discovery of allegedly privileged documents has the burden of demonstrating that the material is not privileged.  <u>State ex rel. Syntex Agri-Business, Inc. v. Adolf</u>, 700 S.W.2d 886, 888 (Mo. Ct. App. 1985) (citing <u>State ex rel. Terminal R. Ass'n of St. Louis v. Flynn</u>, 257 S.W.2d 69, 72 (Mo. 1953)). Plaintiffs do not seek production of the documents because they already have them, so the burden is on Defendant to demonstrate that the documents are privileged.  <u>Cf</u>. <u>State v. Pride</u>, 1 S.W.3d 494, 505 (Mo. Ct. App. 1999) (the party asserting the privilege "must show:  (1) the existence of an attorney-client relationship at the time of the interaction or communication, and (2) that an attorney-client relationship existed with regard to the subject matter of the communication or incident."); <u>see also</u> <u>Rabushka ex rel. United States v. Crane Co.</u>, 122 F.3d 559, 565 (8th Cir. 1997) (placing burden of proving privilege on the party asserting it).

Although not stated in these explicit terms, JPMA's position seems to be that any communication to or from Locker is privileged simply because Locker is an attorney. The privilege is not this broad.  In order for a communication from lawyer to client (or vice versa) to be privileged, the communication "must be within the context of the attorney client relationship."  <u>St. Louis Little Rock Hosp. v. Gaertner</u>, 682 S.W.2d 146, 150 (Mo. Ct. App. 1984).  The privilege does not exist "where the dealing and communication between a non-lawyer and a lawyer concern non-legal matters."  <u>State v. Smith</u>, 979 S.W.2d 215, 220 (Mo. Ct. App. 1998).  In other words, not everything said by or to a lawyer is privileged; the inquiry requires a consideration of the role played by the attorney during the course of those communications.  To be privileged, "the purpose of the communication must be to secure legal advice from the client's attorney."  <u>St. Louis Little Rock Hosp.</u>, 682 S.W.2d at 150.

In order for the privilege to be applicable, the parties to the communication in question must bear the relationship of attorney and client. Moreover, the attorney must have been engaged or consulted by the client for the

4

purpose of obtaining legal services or advice services or advice that a
lawyer may perform or give in his capacity as a lawyer, not in some other
capacity. A communication is not privileged simply because it is made by
or to a person who happens to be a lawyer.

Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir. 1978) (en banc).  For
instance, if the advice rendered was based solely upon the lawyer's business acumen
there would be no justification for extending the privilege to that advice merely because
the person rendering it was a lawyer.  The related "work product" privilege applies to
"materials created or commissioned by counsel in preparation for possible litigation and
'thoughts' and 'mental processes' of the attorney preparing the case."  Ratcliff v. Spring
Missouri, Inc., 261 S.W.3d 534, 546-47 (Mo. Ct. App. 2008).

        In this case, JPMA asserts the privilege with respect to advice regarding
lobbying, public relations, dealing with the media, and other non-privileged matters.
Advice on these topics is not privileged, even if the advice comes from an attorney.
With these principles in mind, the Court has examined each of the documents identified
in JPML's privilege log and considered the parties' arguments.  The Court's rulings are
set forth on a document-by-document basis, using the same identification system
employed in the privilege log.


_JPMA-00000044_

        This document is an e-mail from Locker to unknown recipients.  The fact that the
recipients are unknown suggests JPMA has not met its burden of demonstrating the
privilege exists.  Moreover, the contents are not subject to the privilege.  JPMA
accurately describes the e-mail as containing Locker's "impressions by retailers and a
summary . . . of recent legislative activity."  The former discussion relates to marketing
and business strategy in light of pressure from environmental groups and does not
involve legal advice.  The latter discussion also does not involve legal advice or
analysis: it is simply a list of legislative activity undertaken by a variety of governmental
entities around the country.  For instance, the document recites that House of
Representatives Committee on Energy and Commerce is undertaking an investigation

into the use of BPA in children's products.  This fact (along with the other reports of legislative activity) is devoid of any information that is subject to the privilege.

*JPMA-00000096*

This is an e-mail communication between Dwyer and JPMA's Communications Director, Amy Chezem.  Locker is copied on the e-mails; there is no communication from him to Dwyer or Chezem.  The e-mails discuss an article about BPA that appeared in a magazine, expressing concern that the article took a position about safety contrary to JPMA's position.  The e-mails mention that a JPMA Board Member is somehow involved with the magazine and discuss whether to bring it to the publisher's or editor's attention.  The e-mails do not discuss legal matters and do not seek legal advice.  The e-mails are not privileged.

*JPMA-00000150*

This is another chain of e-mails, but the privilege is asserted only with respect to the first e-mail in the chain.  In that e-mail, JPMA's President (Bob Waller) wrote to Chezem, Dwyer, and Locker, that the authors of a book about baby products had altered their recommendations based on concerns about BPA.  Waller indicated this was an opportunity to "discredit" the authors because of their lack of scientific expertise. Waller also indicated that he had received complaints about the book and the authors in the past.  The e-mail does not solicit legal advice; it does not even touch on legal matters.  The e-mail is not privileged.

*JPMA-00000435*

This is an agreement specifying the terms of legal representation, secured by Locker on JPMA's behalf, for the purpose of challenging an ordinance passed in San Francisco regarding the manufacture, sale, or distribution of products containing BPA. This document is privileged, and Plaintiffs are directed to return all copies to Locker within seven days of this Order.

<u>*JPMA-00000466*</u>

This document details legal theories regarding the San Francisco ordinance. It was prepared by counsel for the American Chemistry Council ("ACC"), and forwarded to Dwyer by a representative of ACC (Steve Hentges). The Court believes ACC and JPMA had a common interest in litigation involving the San Francisco ordinance, so the communication between the two organizations does not waive either entity's privilege. <u>Lipton Realty, Inc. v. St. Louis Housing Auth.</u>, 705 S.W.2d 565, 570-71 (Mo. Ct. App. 1986). Plaintiffs are directed to return all copies of this document to Locker within seven days of this Order.

<u>*JPMA-00000545*</u>

This e-mail chain between Dwyer and others at JPMA with Locker discusses receipt of a subpoena and JPMA's subsequent course of action. The e-mail chain is privileged and shall be returned to Locker within seven days.

<u>*JPMA-00001201*</u>

This is a memo from Locker to Dwyer that discusses public relations and other media efforts with respect to the "public debate" about BPA. The memo does not discuss any legal matters. Public relations activity, even when conducted by a lawyer, is not privileged.

<u>*JPMA-00001209*</u>

This is an e-mail from Locker to Dwyer relating the comments of "ACC lobbyists" regarding a city council's legistlative action. Joint lobbying efforts are not privileged, even when the results are passed through an attorney. Nothing in this e-mail is privileged.

*JPMA-00001214*

      This is an e-mail from Locker to Dwyer proposing a publicity/lobbying campaign based on FDA assessments.  This is not legal advice, and is not privileged.

*JPMA-00001215*

      This is an e-mail from JPMA's Communications Manager, Yarissa Reyes, to Dwyer and Locker.  The e-mail discusses plans to "alert the public" about the possible undesirable effects of a proposed ordinance.  This does not solicit legal advice and is not privileged.

*JPMA-00001217*

      This is described by JPML as an e-mail from Locker "regarding BPA legislative developments."  It does not contain legal advice and is not privileged.

*JPMA-00001219*

      This is an e-mail from Locker to Dwyer, Chezam, and others asking if "we want to prepare a response" to a Canadian agency findings regarding the amount of BPA in certain products.  This is a publicity matter, not a legal matter: the e-mail is not privileged.

*JPMA-00001220*

      This e-mail from Locker to Dwyer and Waller states only "Try this."  The Court has no idea what "this" is.  JPMA's privilege log indicates the e-mail had an attachment, but the attachment is not described and has not been supplied to the Court.  It is not even clear whether the attachment was supplied to Plaintiffs.  JPMA has not demonstrated this e-mail is privileged.

*JPMA-00001221*

      This e-mail from Chezam to Locker references a list of Frequently Asked Questions – which are not attached.  The e-mail indicates the FAQ is intended for use

with "any audience as its pretty general," making it unlikely the FAQ relates to confidential legal matters. JPMA's privilege log indicates the FAQ relates to "California legislation." Based on what has been provided, the e-mail from Chezam to Locker is not privileged.

## *JPMA-00001231*

This document is a "forwarded e-mail." Representatives from the ACC sent Locker an e-mail providing a "quick update on the meetings of the Albany and Schenectady County Legislature Meetings." Locker forwarded this e-mail to Dwyer with the notation "FYI." According to the privilege log, JPMA concedes "[t]he forwarded email from the ACC is not privileged." The privilege is asserted only with respect to Locker's e-mail forwarding the ACC's e-mail.

An attorney's statement that an unprivileged document is being provided "FYI" is not legal advice. An unprivileged document does not become privileged merely because it touched an attorney's hands (or computer). The privilege claim is denied.

## *JPMA-000012332*

This document is similar to JPMA-00001231, and the Court's ruling is the same.

## *JPMA-00001233*

This document is similar to JPMA-00001231, and the Court's ruling is the same.

## *JPMA-00001234*

This e-mail chain circulates, in the words of JPMA's privilege log, "an update on BPA media issues." The forwarding of this e-mail by Locker is not privileged.

## *JPMA-00001236*

Locker received an e-mail from a member of Senator Charles Schumer's staff, asking if he was available to meet to discuss a bill Senator Schumer planned to sponsor, write, or introduce. Locker forwarded the e-mail to Dwyer with the comment "It

begins . . . again." JPMA does not contend the e-mail from Senator Schumer's staff member is privileged, and the Court holds Locker's statement is not privileged.

*JPMA-00001237*

Locker received an e-mail from a representative of Toys R Us that contained a statement about BPA that Toys R Us placed on its own website. Locker forwarded the e-mail to Dwyer with the comment "TRU Position." JPMA does not contend the e-mail from Toys R Us is privileged, and the Court holds Locker's comment is not privileged.

*JPMA-00001238*

In this e-mail, Locker advises Dwyer and Waller of an opportunity to be involved in a "grass roots coalition in opposition" to California legislation regarding BPA. The e-mail does not discus legal matters and is not privileged.

*JPMA-00001239*

This e-mail from Locker to Dwyer and Waller forwards communications from Exxon regarding the possibility of joining forces for lobbying efforts. The e-mail is not privileged.

*JPMA-00001241*

This e-mail addresses a California legislative committee's action with respect to pending legislation. It does not contain legal advice and is not privileged.

*JPMA-00001242*

This e-mail is similar to JPMA-00001241 and is not privileged.

*JPMA-00001243*

Plaintiffs concede this document is privileged, and the Court agrees. Plaintiffs are directed to return all copies of this document to Locker.

JPMA-*00001244*

This e-mail from Locker to Dwyer merely forwards another e-mail announcing a press conference conducted by the Chemical Industry Council of Illinois. It is not privileged.

*JPMA-00001247*

JPMA's privilege log accurately describes this as an "e-mail communication from Mr. Locker to Mr. Dwyer and Mr. Waller regarding lobbying efforts related to phthalates legislation." It is not privileged.

*JPMA-00001254*

In this e-mail, Locker forwarded an article appearing in the National Post to Dwyer and Reyes. The only comment from Locker is the statement "Another good one." The communication is not privileged.

*JPMA-00001257*

This e-mail from Locker to Dwyer reports recent legislative activity and lobbying efforts. It does not contain legal advice and is not privileged.

*JPMA-00001263*

This e-mail from Locker to Waller, Dwyer and Chezem reports recent legislative activity and strategies of retailers with regard to safety and environmental concerns. It does not contain any legal advice, opinions, or discussions, and is not privileged.

*JPMA-00001265*

This e-mail communicates something about legislation proposed in Washington state. The meaning of Locker's statements is unclear, but it does not appear to be legal advice. Indeed, JPMA's privilege log describes this as a "comment[ ] on proposed legislation." There is no basis for concluding the document is privileged.

Plaintiffs concede this document is privileged, and the Court agrees. Plaintiffs are directed to return all copies of this document to Locker.

*JPMA-00001269*

Chezen sent this e-mail to Locker, asking him to "review attached statement ASAP" before it was "sen[t] over the wire." The statement Chezen wanted Locker to review is not attached. Nonetheless, Chezen's and Locker's statements suggest the matter in question related to a press release and not to a legal matter. Accordingly, this e-mail is not privileged.

*JPMA-00001270*

Locker forwarded an article from the New York Post to Chezem and Dwyer with a comment indicating his approval of the story. No legal matters are discussed, so the document is not privileged.

*JPMA-00001272*

This e-mail from Locker to Dwyer and Waller accompanied a bill proposed in New York City. Locker's comments indicate that hearings are scheduled and "[w]e will oppose." There are no legal matters discussed.

*JPMA-00001273*

Locker's e-mail to Dwyer forwards a legislative update from the Toy Industry Association ("TIA"). This aspect of the document is not alleged to be privileged. JPMA asserts a privilege for Locker's comments regarding comments made by Senator John Kerry during a congressional hearing; Locker's comments are not privileged.

*JPMA-00001275*

In this e-mail chain, Locker (1) received communications regarding proposed legislation in Washington state, (2) sent a comment about lobbying and legislative

activity to a representative at ACC, and (3) forwarded the entire chain (with his comment) to Dwyer. JPMA asserts a privilege only with respect to the second (and perhaps the third) component of this chain, but none of it is privileged because it involves lobbying strategy, not legal strategy.

*JPMA-00001276*

This comment of Locker's regarding "media and stories we can expect" is not legal in nature and, hence, is not privileged.

*JPMA-00001281*

This e-mail from Waller to Locker and Dwyer is a cover-letter for another document. According to JPMA's privilege log, the attachment was "an article re Children's Chemical Risk Reduction Act with comments." Waller's e-mail does not seek legal advice, and there is no suggestion anything about this e-mail relates to legal advice, strategy, or the like. The Court holds it is not privileged.

*JPMA-00001319*

In this e-mail Locker notified Dwyer that the Governor of Minnesota had signed a bill into law. The e-mail also discusses the prospects for more legislative activity around the country. It does not discuss legal matters, so it is not privileged.

*JPMA-00001328*

This e-mail reports the progress of proposed legislation in California. It does not contain legal advice, analysis, or commentary, and is not privileged.

*JPMA-00001329*

This is an e-mail chain circulated among Locker, Dwyer, Chezem, and representatives of various baby product manufacturers (some of whom are Defendants in this case). The e-mail discusses the likely public relations effect of a story distributed by the Associated Press. Public relations matters are not privileged.

*JPMA-00001330*

This is an e-mail chain discussing creation of a website to disseminate information about BPA. Nothing in this document is privileged.

*JPMA-00001331*

This e-mail only discusses legislative activity in Suffolk County, New York, and is not subject to the attorney/client privilege.

*JPMA-00001333*

This e-mail is a chain including the one discussed in JPMA-00000096. The only difference is that this chain includes Locker's advice regarding how to persuade the board member to take action favorable to JPMA. It constitutes business advice, not legal advice, and is not privileged.

*JPMA-001334*

This e-mail contains a question posed by Dwyer to Locker regarding the comparative regulatory authority of the FDA and the CPSC, as well as Locker's response to the inquiry. The Court holds this document seeks and provides legal advice and is privileged. Plaintiffs are directed to return all copies to Locker.

*JPMA-00001337*

The e-mails in this document relate to a BPA escrow account, and JPMA's plan to ask certain baby product manufacturers to "replenish" the account. The subject of the escrow account was discussed during Dwyer's deposition. First, Dwyer addressed requests from baby product manufacturers to contribute to a "PR campaign." Dwyer Dep. at 41-42. Dwyer then denied that an escrow account was ever established. Dwyer Dep. at 43. Plaintiffs' counsel then attempted to ask Dwyer about e-mails referencing an "escrow account," but the attorney/client privilege was asserted. Dwyer Dep. at 43-50.

The escrow account referenced in JPMA-00001337 is never identified. JPMA's only justification for the privilege is that Locker was a recipient of the e-mail. Indeed, this particular e-mail suggests the sole reason for sending it to Locker is to establish a basis (albeit, in the Court's view, an insufficient basis) for asserting the attorney/client privilege. If the funds – escrow account or otherwise – were intended, solicited, or used for public relations campaigns, then e-mails discussing them are not privileged even if Locker received them. In fact, if the funds were intended, solicited, or used for any purpose other than to pay legal fees, they are not privileged. JPMA has failed to demonstrate that the subject of this e-mail is privileged.

*JPMA-00001339*

This e-mail chain originated from Locker and was sent to Chezem, Dwyer, Waller, and Reyes. This initial e-mail advises the recipients of (1) legislative action in Minnesota and (2) developments in this litigation. Dwyer responded with a question about the latter issue.

The discussion about Minnesota legislative activity is not privileged, while the discussion about this lawsuit is. They are combined in a single document, and the Court is unwilling to parse out "privileged parts" of documents from "unprivileged parts" – at least, as here, where it does not appear that privileged information was included merely to prevent disclosure of non-privileged matters. The Court also observes that there is little value to Plaintiffs in the "unprivileged" portions. In the interest of protecting JPMA's privilege, the Court directs Plaintiffs to return all copies of this document to Locker.

*JPMA-00001340*

This e-mail from Locker forwards an article about California legislation. It is not privileged.

*JPMA-00001341*

JPMA asserts a privilege only with respect to Locker's comments regarding the California legislative process.  These comments are not privileged.

*JPMA-00001342*

This e-mail is similar to JPMA-00001341 and the Court's ruling is the same.

*JPMA-00001343*

This e-mail contains a combination of lobbying and public relations advice and is not privileged.

*JPMA-00001344*

JPMA's privilege log accurately describes the subject of this e-mail as "lobbying efforts;" it is not privileged.

*JPMA-00001346*

This is an e-mail from Reyes to Dwyer and Locker commenting on media and blog reports about the FDA.  It does not mention anything legal, nor does it solicit legal advice.

*JPMA-00001347*

In this e-mail Locker encloses a news article about the FDA and BPA and advises Reyes and Dwyer to "keep a list" of advocates opposing the use of BPA.  This is not legal advice.

*JPMA-00001348*

This e-mail encloses an article from the New York Post and provides advice regarding an appropriate position for the media.  The advice provided is not legal in nature.

*JPMA-00001349*

In this e-mail Locker "compile[d] all FDA statements on BPA" for use in lobbying California legislators with respect to pending legislation. This activity is not privileged.

*JPMA-00001350*

This is an e-mail exchange between Locker and Dwyer regarding the wisdom of lobbying the Albany County Legislators and Albany County Executive with respect to pending legislation. The document is not privileged.

*JPMA-00001351*

This e-mail reports Locker's statements to a reporter from USA Today. Even JPMA's privilege log describes this document as "re response to press inquiry." There is nothing about this document that is privileged.

*JPMA-00001352*

This e-mail contains a combination of lobbying and public relations advice and is not privileged.

*JPMA-00001354*

This e-mail contains Locker's advice to Dwyer regarding a response to an e-mail complaint about JPMA's position regarding BPA and related legislation. It is not privileged.

*JPMA-00001355*

This e-mail chain between Dwyer and Locker discusses the interplay of current federal laws with proposed legislation in Washington state, and specifically discusses whether the former would preempt the latter. The discussion constitutes a request for and receipt of legal advice, and is privileged. Plaintiffs are directed to return all copies of this document to Locker.

<u>*JPMA-00001356*</u>

JPMA's privilege log accurately describes the subject of this e-mail as "lobbying efforts;" it is not privileged.

<u>*JPMA-00001357*</u>

This e-mail discusses dealing with the media and is not privileged.

<u>*JPMA-00001358*</u>

This e-mail contains a combination of lobbying and public relations advice and is not privileged.

<u>*JPMA-00001359*</u>

This is a continuation of the e-mail chain identified as JPMA-00001270. Nothing in the additional portions gives rise to a privilege.

<u>*JPMA-00001360*</u>

This e-mail chain discusses proposed legislation in New York City, the fact that hearings on the legislation have been scheduled, and industry manufacturing responses to legislation in Europe. It does not contain legal advice and is not privileged.

<u>*JPMA-00001361*</u>

This e-mail discusses the progress of pending legislation in Massachusetts and is not privileged.

<u>*JPMA-00001363*</u>

This e-mail chain discusses JPMA's obligations and options with respect to subpoenas issued in this case. These communications are privileged and Plaintiffs are directed to return all copies to Locker.

<u>*JPMA-00001365*</u>

This e-mail provides advice regarding an appropriate position for the media.  The advice provided is not legal in nature.

*JPMA-00001366*

This e-mail exchange between Locker and Dwyer discusses a Washington Post story.  It is not privileged.

*JPMA-00001367*

This e-mail addresses reports from lobbyists regarding legislation in California.  It does not address legal matters and is not privileged.

*JPMA-00001369*

Plaintiffs concede, and the Court agrees, that this document is privileged. Plaintiffs shall return all copies to Locker.

*JPMA-00001371*

This e-mail exchange between Locker and Dwyer discusses the wisdom of commenting on legislative actions in Canada.  It is not privileged.

*JPMA-00001372*

This is an update of legislative activity in California and is not privileged.

*JPMA-00001374*

This document contains (1) press releases issued by the North American Metal Packaging Alliance and (2) a brief discussion about legislative activity in New Jersey. The document is not privileged.

*JPMA-00001376*

This e-mail chain discusses the drafting of a response to an editorial appearing in the Chicago Tribune.  Discussions about communications to the media are not privileged.  There is also a mention of the National Institute of Health, but there is not legal advice provided.

<u>*JPMA-00001379*</u>

This documents starts with an e-mail from Reyes to Dwyer and Locker that forwards an article appearing on WebMD.com.  Locker responded with instructions to "save" the article.  This does not appear to be legal advice, so it is not privileged.

<u>*JPMA-00001380*</u>

This is an update of legislative activity in Washington state.  It contains Locker's prediction about the governor's likley reaction.  It does not contain legal advice.  It is not privileged.

<u>*JPMA-00001382*</u>

This e-mail forwards an article from the Wall Street Journal to Dwyer, Waller and Reyes.  The article involves a person formerly with Greenpeace.  Locker opines that the article "[m]ight be useful with legislators, as well as the press, on this issue."  Locker does not provide any legal advice.  The document is not privileged.

<u>*JPMA-00001383*</u>

This e-mail discusses regulatory activity in Canada, including a planned news conference to announce decisions from that nation's regulatory body.  Nothing in this document seeks or contains legal advice.  The only connection to Locker is that he was among the recipients of the exchange between Dwyer and Reyes.  It is not privileged.

<u>*JPMA-00001384*</u>

The subject of this e-mail exchange is unclear.  It discusses scientific research, about apparently unrelated health issues and the need to "move forward with the Press Kit."  Nothing about the e-mail's contents suggests it is privileged.  JPMA's privilege claims describes the document as involving "Dezenhall meeting" but does not explain what this is.  JPMA has not carried its burden of demonstrating the document is privileged.

### JPMA-00001385

Most of the e-mails in this chain are between Dwyer and a representative from one of JPMA's members.  It does not appear JPMA contends these communications are privileged.  At some point, Dwyer asked Locker for advice on how best to respond to the repeated inquiries.  Locker's advice points out that JPMA has "a broad range of members," including some who are more interested in environmental issues than others.  He provides a proposed response.  However, he is not asked for – and does not provide – legal advice, so this document is not privileged.

### JPMA-00001386

The subject of this e-mail exchange is not entirely clear, but it appears to be an exchange of legal advice regarding advertising claims and certain FTC decisions.  The Court concludes there is a common interest between JPMA and its members, and that this document is privileged.  Plaintiffs shall return all copies to Locker within seven days.

### JPMA-00001388

JPMA asserts a privilege with respect to the portions of this document discussing Senator Schumer.  The privilege is asserted because the discussion involves "lobbying efforts."  This discussion is not privileged.

### JPMA-00001391

These e-mails discuss "legislative developments" and are not privileged.

*JPMA-00001404*

       This document is practically devoid of content.  All that can be gleaned is that there was some communication with an unidentified publication about alleged errors in an editorial.  All that can be substantiated is that Locker (and perhaps another person at Locker's firm) were involved in or copied on the communications.  Nothing about this document is privileged.

*JPMA-00001405*

       This chain starts with a representative from the American Council on Science and Health forwarding a newspaper article to Locker, along with a copy of the representative's response (which was also sent to the newspaper).  Locker forwarded the entire e-mail to Dwyer.  Nothing about this document qualifies for the privilege.

*JPMA-00001407*

       Chezem sent this e-mail to Locker, asking that Locker review an "attached statement" so that she could "send [it] over the wire."  The statement she asked him to review is not included.  The document is not privileged.

*JPMA-00001408*

       This is a query from Locker to Dwyer, asking if he knew anything about a report that Suffolk County Legislature had passed an ordinance banning BPA.  This is not privileged matter.

*JPMA-00001413*

       Reyes forwarded materials to Locker for "use when communicating with retailers."  The communications are not legal in nature and do not qualify for the privilege.

*JPMA-00001414*

Dwyer e-mailed Locker, Reyes and Waller to report discussions during a conference call with ACC. Dwyer's e-mail announces ACC's plan to sponsor research reports made to the FDA, and an upcoming media release from ACC. The communication to Locker is not privileged.

<u>*JPMA-00001415*</u>

In this e-mail Locker advises Dwyer that "local retailers" had received "the message," and that "pressure" needed to be maintained. This does not appear to be legal advice.

<u>*JPMA-00001416*</u>

In this e-mail Locker advises Dwyer that certain bills passed the Washington House of Representatives and that TIA and ACC were retaining lobbyists to (presumably) prevent passage. Locker suggests Dwyer "support with a letter writing campaign to the Senate." This is not legal advice and contains no confidential information.

<u>*JPMA-00001913*</u>

This e-mail from Reyes forwards a link to a story in the Columbia Journalism Review. Reyes' comment to Dwyer and Locker indicates the article is "great." This is not privileged.

<u>*JPMA-00001939*</u>

This e-mail from Reyes forwards a story appearing on ABC News' website. In the subject line she expresses her belief that "FDA has lost all their credibility." This is not privileged.

<u>*JPMA-00001954 through JPMA-00001958*</u>

This is a series of press releases Reyes sent to Dwyer, Locker, and Waller, asking for their review and approval for distribution to the media. None of the recipients' comments are included. Nothing about these documents entitles them to be privileged.

*JPMA-00001994*

In this e-mail Reyes asked Locker to review an "attached draft" and take note of Dwyer's concerns set forth in an attached e-mail. Neither the draft nor Dwyer's e-mail are included. The e-mail from Reyes to Locker is not privileged.

*JPMA-00002005*

Reyes sent Locker and Dwyer a "fairly balanced (and lengthy) article on BPA" that appeared in Today's Parent magazine. The document is not privileged.

## C. Remedy

The Court begins by expressing its disappointment with JPMA. Its non-responsiveness was documented in Part I of this Order. The Court has reviewed Dwyer's deposition: it is remarkable for the seemingly obstructive stance he has taken, feigning ignorance of the meaning of even the most basic and well-understood words in the English language. His lack of understanding was augmented by Locker, who asserted that many questions were "vague:" when such objections were lodged, Dwyer obligingly indicated his lack of understanding. It was almost as if a modified version of "Password" was being played: if Plaintiffs' counsel did not use the precisely correct word (i.e., a word acceptable to Dwyer/Locker), then Dwyer did not understand the question.

JPMA's treatment of the privilege issue is also consistent with its uncooperative efforts. Despite knowing what had been supplied, JPMA waited until the deposition to claim the documents supplied were privileged. The Court has held this delay did not destroy the privilege, but the delay nonetheless interfered with the proceedings. Following the deposition, JPMA has asserted one hundred documents were privileged. Its success rate was a meager 11% – and the documents that have been deemed not

privileged are not even close.  JPMA's position – that any communication to or from an attorney is privileged regardless of the subject matter – is completely unsupportable to the point of frivolousness.

Within ten days of this Order, Dwyer will make himself available to be redeposed. The deposition will take place in the city where the Plaintiffs' attorney conducting the deposition is located.  The deposition may be taken in that attorney's office.  The scope of the deposition will not be limited, but it will not exceed eight hours in length.  Costs associated with the deposition will be borne by JPMA.  After the deposition, Plaintiffs' counsel may submit a request for attorney fees in connection with the deposition.  Any such request will include a copy of the deposition for the Court's review.

IT IS SO ORDERED.


/s/ Ortrie D. Smith                          
ORTRIE D. SMITH, JUDGE
DATE: March 25, 2011                      UNITED STATES DISTRICT COURT