UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| In Re: BISPHENOL-A (BPA) ) | MDL Docket No. 1967 |
| POLYCARBONATE PLASTIC PRODUCTS ) | Master Case No. 4:08-1967-MD-W-ODS |
| LIABILITY LITIGATION ) | |
| ) | Judge Ortrie D. Smith |
| ) | |
| This DOCUMENT relates to: ) | |
| ) | |
| Broadway, et al. v. Avent America, Inc., et al., ) | |
| Case No. 08-00997 (W.D. Mo.) ) | |
| ) | |

## OBJECTIONS OF MAX CARAPIA
## TO SETTLEMENT AND NOTICE OF INTENT TO APPEAR

COMES NOW, Max Carapia ("Objector,") a Class Member in this action, by and through his undersigned counsel, and hereby files this Objection to the Proposed Class Action Settlement, gives notice of his counsel's intent to appear at the May 2, 2011 fairness hearing, located at 400 East 9th Street, Kansas City, Missouri 64106 in the United States District Court for the Western District of Missouri – Western Division, in front of Judge Ortrie D. Smith. In support of his objection, Objector states as follows:

### I.   SUMMARY OF OBJECTIONS

For the following reasons, this Objector states that the Settlement Agreement is not fair, reasonable and adequate.

1. The attorneys' fee request is based on a nebulous value of the common fund and is therefore unsupported and not awardable at this time; AND

2. This coupon settlement provides little relief to Class Members and, conversely, provides a windfall to Defendants.

1

## II. THE COURT MUST ACT AS FIDUCIARY ON BEHALF OF THE CLASS

The court has a "duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent class members and to police class action proceedings." *Strong v. BellSouth Telecommunications*, Inc., 137 F.3d 844, 849 (5th Cir. 1998). The duty requires a review of substantive claims included in the agreement and an investigation into the manner in which fees of class counsel are to be paid and the dollar amount for such services. *Id.* The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003.

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." A settlement may only be approved after the court finds it is fundamentally fair, adequate and reasonable. Id. This rule has been read as a requirement for the court to " 'independently and objectively analyze the <u>evidence</u> and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.' " *In Re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3rd 2001), citing *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995). (emphasis added)

Once a settlement is reached, both Class and Defense counsels' interests change. No longer vigorously advocating for their clients' interests, Class Counsel's interests are

2

inherently conflicted with the Class as they become another claimant to the very fund that they have created for their clients. Defense Counsel, alternatively, cares naught for the disbursement of fees to Class Counsel as payment of those fees will be deducted from the sum total that their client is already paying. It matters little to Defense Counsel whether Class Counsel takes 2% of the fund or 50% as the result is the same for their client in either scenario. Thus, the Court necessarily becomes the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing fee applications. *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989.) Countless cases have confirmed and identified the Court's fiduciary role. For example:

> Before considering the proper methodology for awarding attorney's fees out of a common fund, the Court feels compelled to define its role in these proceedings. When an attorney makes a claim for fees from a common fund, his interest is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). This divergence of interests requires a court to assume a fiduciary role when reviewing a fee application because there is often no one to argue for the interests of the class: class members with small individual stakes in the outcome will often fail to file objections because they lack the interest or resources to do so and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel."
> *In Re Copley Pharmaceutical, Inc.* 1 F.Supp.2d 1407 (Wyoming 1998). (emphasis added.)

The instant settlement cannot be approved without the Court's assurance that the settlement and fee request are fair, reasonable, and adequate for the Class.

### III. COUPON SETTLEMENTS ARE DISFAVORED AND, IN THIS INSTANCE, PROVIDE LIMITED VALUE TO CLASS MEMBERS.

The Class Action Fairness Action (CAFA) denotes specific requirements with respect to approval of coupon settlements. The statute requires that before a district court may approve a "coupon settlement," it must "determine whether, and mak[e] a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. §

3

1712(e). Although the "fair, reasonable, and adequate" language used in section 1712(e) is identical to the language relating to settlement approval contained in Rule 23(e)(2), several courts have read § 1712(e) as imposing a heightened level of scrutiny in reviewing such settlements. See, e.g., *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006).

Likewise, countless district courts have identified coupon settlements as one in which the relief consists of "a discount on another product or service offered by the defendant in the lawsuit." *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 112459, at *9 (N.D. Cal. Aug. 6, 2008).

Courts have primarily articulated three concerns with "coupon settlements": "they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007.), citing Christopher R. Leslie, *The Need to Study Coupon Settlements in Class Action Litigation*, 18 GEO. J. LEGAL ETHICS 1395, 1396-97 (2005)). As explained in more detail below, this settlement suffers from all three of these issues.

### The Settlement Value is Nebulous and Recovery Uncertain.

The settlement itself provides relief, in brief overview, in the following manners. If a Class Member can provide proof of ownership of one of the polycarbonate products (bottles and/or sippy cups) produced by Defendants, either by turning in the item itself or showing proof of purchase, then he or she falls into categories A, B, or C, and may receive a full-refund or a voucher for 125%, 80%, and 60% of the original value of the product, respectively. (See Notice, ppgs. 5-6.) If the Class Member is in possession of neither the bottle nor the proof of purchase (which is likely to be the bulk of the Class Members since the

4

Class Period runs from 2001), these individuals will fall into categories, D, E, and F, and will receive coupons for 50%, 40%, and 30%, respectively, good only toward the purchase of a product offered from Defendants.[1] (See Notice, pgs. 6-7.) (See Settlement Agreement, Docket 572, p. 19.) There is a 3 million dollar aggregate claim ceiling.[2] (See Notice, pg. 8.) (See Settlement Agreement, Docket 572, p. 19.)

The problem with the foregoing subclasses is two-fold. First, the large majority of class members most likely falls into categories D, E, or F. The Class Period spans from 2001 to present. The bulk of Class Members' children are probably no longer using bottles or sippy-cups. The likelihood that the Class Member has retained either the actual bottle or a receipt for the purchase of same is slim at best. It is simply not the type of item that a person either retains the receipt for or keeps for any significant length of time. In fact, it is safe to assume that bottles are replaced frequently and certainly not kept for use by multiple children. Thus, the bulk of the Class Members will likely be members of Subclasses D, E, or F, and receive coupons for either, 30%, 40%, or 50% off the purchase of a product manufactured by Defendants. Second, even if a Class Member does fall into subclasses A, B, or C, in order to claim any benefit, he or she is required to either find a receipt or package up the cumbersome baby bottle, pay for shipping, and fill out the two page claim form. In either scenario, the likelihood is minute that a Class Member will undergo such a process for such a de minimis benefit.

Thus, the settlement in the instant lawsuit appears to fall into all three categories of concern, as delineated supra in Section III. *Figueroa,* 517 F. Supp. at 1302. **First,** it provides very little actual value to Class Members. **Secondly,** this settlement does nothing to disgorge Defendants of any monies made by manufacturing and selling these defective and harmful baby products. Contrarily, this settlement will benefit Defendants significantly, as

---

[1] The Defendants offer a limited selection, which ranges from additional baby bottles to shavers.
[2] This, in itself, is an issue because if the aggregate cap is reached, a pro rata reduction in percentage "off" of

5

explained further below. **Third,** the only "reward" for the majority of the Class may be obtained by spending money on Defendants' products. (Settlement Agreement, Docket 572, pg. 19.)

This settlement is more of a windfall for the Defendants than for the Class. This coupon settlement effectively operates as a marketing strategy, which will result in numerous individuals purchasing a variety of products from Defendants; some of which are expensive. (e.g. Sonicare toothbrush. (Settlement Agreement, Docket 572, pg. 19.)) Thus, the minimal and, as yet undefined, value of the recovery to the Class and the significant worth of this settlement to the Defendants should be considered in this Court's final approval of the settlement.

## IV. THE RELIEF TO THE CLASS IS INCALCULABLE AT THIS TIME SO DETERMINATION OF THE ATTORNEYS' FEE AWARD IS PREMATURE.

The Eighth Circuit may choose between two alternate approaches to analyze requests for attorneys' fees in Class Actions. *In re Bank America Corp. Securities Litigation*, 228 F.Supp.2d 1061, 1064 (E.D.Mo.2002). The first approach, the lodestar method, is calculated by multiplying the attorney hours expended by a reasonable hourly rate. *Id.*, 228 F.Supp.2d at 1064, citing *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 244 (8th Cir.1996). Alternatively, the Court may employ a "percentage of recovery" approach in which the prevailing party is awarded "a percentage of the common fund that the attorneys obtained for their clients during the course of the litigation." *Id.* However, Courts have held in determining the value of a coupon settlement that the benefit conferred upon the Class should first be calculated prior to awarding fees to Counsel.[3] Thus, inasmuch as the Class is receiving an as yet unquantifiable benefit, an appropriate award for Class Counsel may not be calculated at present and, thus, the fee request should not be granted at this time.

---

[3] In *In Re: Excess Value Insurance Coverage Litigation*, Case No. M-21-84-(MDL No. 1339)(S.D.N.Y. Nov. 2, 2005), Judge Richard M. Berman chose to wait for the coupon claim process to end so he could determine the actual benefits paid to the class before deciding the amount of attorney's fees to award.

6

### The Fee Award Should be Based on the Total Claims Made.

In this case, the value of the total reward to the Class can only be calculated by a determination of the total claims made by the Class Members. As this is a complicated matter, Federal courts generally have followed the Federal Judicial Center guidelines in order to accurately value claims-made settlements when awarding attorneys' fees. They do not simply use the amount made available to the class when calculating a percentage attorneys' fee, which is impossible in this case, but rather wait for the claims to come in and then calculate the fee based upon the amount actually paid out to the class members. *See e.g., In re Compact Disc Minimum Advertised Price Litig.*, 370 F.Supp.2d 320 (D. Me. 2005)(awarding attorneys' fees of 3% of value of redeemed coupons which was 30% of claimed lodestar). *See also, In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar).

> Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney fees only if I know the total value of the settlement. But although I am satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value. Therefore, I have determined to delay award of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is.
> *In re Compact disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp.2d 184 189-190 (D. Me. 2003)(Hornby, D.J.).[4]

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot

---

[4] See, for example, in *Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*, 546 F.Supp. 1, 5 (N.D.Ohio 1982), the court approved a class action settlement involving the use of "Food Purchase Certificates." However, "[r]ecognizing the likelihood that many Food Certificates [would] not be used by their recipients," the settlement further provided that the defendants would make payments of food or cash to charitable organizations "to the extent that Certificates [were] not redeemed in any given year." *Id.* In *Langford v. Bombay Palace Restaurants, Inc.*, No. 88 Civ. 5279, 1991 WL 61107, at *1 (S.D.N.Y. April 8, 1991), and *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F.Supp. 1379, 1382 (D.Md.1983), the coupons issued as part of the settlements were redeemable for product discounts or, alternatively, for a lesser amount of cash. In other cases, scrip is used in class action settlements in conjunction with cash payments. See, e.g., *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 305 (N.D.Ga.1993); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, No. MDL 150, 1993 WL 39306, at *2 (C.D.Cal. Jan. 12, 1993); *New York v. Nintendo of Am., Inc.*, 775 F.Supp. 676, 679 (S.D.N.Y.1991).

7

accurately be assessed until the rate at which Class Members redeem ...Vouchers is known ...
*In re Excess value Ins. Coverage Litig.*, 2004 2004 WL 1724980 (S.D.N.Y.,2004.) at *16.

The case of *Yeagley v. Wells Fargo & Co.*, 2008 WL 171083. (N.D.Cal. 2008), is likewise applicable to the situation before this Court. In *Yeagley,* the court confronted the task of evaluating a coupon settlement for the purpose of awarding attorney fees:

> To award class counsel the same fee regardless of the claim participation rate, that is, regardless of the enthusiasm of the class for the benefits purportedly negotiated on their behalf, would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the needs of the class. In this case, for example, the one percent claim rate demonstrates that the brochure did not effectively educate the claim members about the importance of credit reports and monitoring their credit ... Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained... *Id.* at *9.

Thus, this Court should defer ruling on Class Counsel's attorney fee request until all refunds are paid and all vouchers are claimed and utilized. Only then can the amount of relief awarded, both monetarily and by coupon, be calculated to assure that fees are paid according to relief which actually is received by Class Members, not according to unsubstantiated speculation about how much relief might be received.

Determining the value of injunctive relief to the Class is likewise difficult. The true value of injunctive relief is often too speculative to be considered with the settlement fund, and thus may often be disregarded. *Staton v. Boeing*, 327 F.3d 938, 973-74 (9th Cir. 2003). *See also*, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6 n.9; Robert L. Rossi, Attorneys' Fees § 7.9 (2003). At best, the value of injunctive relief can be considered as a relevant circumstance in considering fairness of a fee. *See, Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1049 (9th Cir. 2002). Commentary to Rule 23(h), Federal Rules of Civil Procedure, confirms that adding the value of injunctive relief to common funds is limited to suits involving civil rights. *See* Advisory Committee Note, Rule 23(h).

8

## V. OBJECTORS PROVIDE VALUE TO THE CLASS.

Objectors provide great value to the class action process. Without resolving the issues described above, the Settlement could become a complete sham and no one would be the wiser. The judicial system would have failed Class Members by requiring no mechanism for assuring that the agreed relief is ever received by the persons who should benefit. The foregoing observations are submitted to improve the Settlement, and thereafter to guarantee it will work, and to show when and how well it is completed. These improvements are developed only now because objectors offer the last opportunity to preserve the adversary process which is necessary to test the fairness of a proposed settlement.

"It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . . It is impossible for a class to select, retain or monitor its lawyers as an individual client would." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002). "Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement." Id. "Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative." Id.

"Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally." *Great Neck*, 212 F.R.D. at 412. "From conflicting points of view come clearer thinking." *Id.* at 412-13. "Therefore, a lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service." *Id.* at 413.

Objector's counsel has been recognized where their efforts have augmented the common fund or otherwise improved a class action settlement. See, e.g., *Bowling v. Pfizer, Inc.*, 922 F.Supp. 1261, 1285 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996); *In re Domestic*

9

*Air Transp. Antitrust Litig.*, 148 F.R.D. 257, 359-60 (N.D.Ga. 1993). Indeed, even in cases where objectors appeared but the settlement terms were not altered, courts have recognized their value in that their presence improved the process and assisted the court in its scrutiny of the settlement. *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325-27 (2d Cir. 1990); *Howes v. Atkins*, 668 F.Supp. 1021, 1027 (E.D.Ky. 1987); *Frankenstein v. McCrory Corp.*, 425 F.Supp. 762, 767 (S.D.N.Y. 1977); *see also Domestic Air*, 148 F.R.D. at 359. And the Committee Notes to Rule 23(h) expressly states the benefit that objectors may bring to a case:

> "In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel, or attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel. Other situations in which fee awards are authorized by law or by agreement of the parties may exist."
> 2003 Committee Note, Rule 23(h).

**Request for Attorneys' Fees.**

Based on the foregoing, this Objector wish to reserve the right to apply for reasonable and appropriate attorney's fees for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the Proposed Settlement, identifying problems with the Proposed Settlement, and presenting substantial and workable solutions.

Just as objector's counsel should be encouraged to assist the class-action process, so should individual class members be encouraged to participate. Accordingly, an incentive award is appropriate for Objector herein for his willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

## VI. ADOPTION AND JOINDER OF ALL OTHER OBJECTIONS.

This Objector joins in and adopts all well-taken, good-faith objections filed by other Class Members in this case and incorporates them by reference as if they appeared in full herein.

**WHEREFORE**, This Objector respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

C. Award an incentive fee to this Objector for its service as a named representative of Class Members in this litigation.

Dated: April 11, 2011

Respectfully submitted,

By: _____
Kenneth E. Nelson (MBE 31993)
Nelson Law Firm, P.C.
1813 NE 83rd Street
Kansas City, MO 64118
Phone: (816) 421-7225
Fax: (815) 642-8274
Email: kennelson@mclaw.com

11

U.S. District Court, Western District of Missouri
In re: Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation
Master Case No. 4:08-1967 MD-W-ODS

# PHILIPS BPA SETTLEMENT
## PROOF OF CLAIM FORM
[NO PROOF OF PURCHASE REQUIRED]

**Must be Postmarked by July 16, 2011**



## INSTRUCTIONS

1. If you would like to receive a voucher(s), you must complete this Claim Form.
2. Your claim must be postmarked by July 16, 2011.
3. You must complete the information on page 2 for each qualifying product purchase or qualifying product you received as a gift.
4. You must certify your claim under penalty of perjury by (a) answering the three Certification questions on page 3, (b) signing your Certification, and (c) providing the date you signed the Certification.
5. There is a limit of three (3) vouchers per household.
6. Please return your form postmarked or delivered no later than July 16, 2011, to:

   By Mail or Courier Delivery:  BPA Product Settlement
                                 c/o Dahl, Inc.
                                 410 Central Avenue N
                                 P.O. Box 2061
                                 Faribault, MN 55021
   By Fax:                       (507) 384-0024
   By Email:                     claims@PhilipsBPAsettlement.com

7. QUESTIONS? Visit the settlement website at www.PhilipsBPAsettlement.com or call toll-free 1-866-730-1621.

## CLASS MEMBER INFORMATION

**FIRST NAME OF SETTLEMENT CLASS MEMBER:** MAX
**MIDDLE INITIAL:** J
**LAST NAME OF SETTLEMENT CLASS MEMBER:** CARAPIA
**MAILING ADDRESS:** 1332 E TAYLOR STREET
**CITY:** VISTA
**STATE:** CA
**ZIP CODE:** 92084
**DAYTIME PHONE NUMBER:** 760 727 2627
**EVENING PHONE NUMBER:** 760 727 2627

## CHILD INFORMATION

Provide the name(s) and dates of birth of the children who used the product:

**CHILD 1 NAME (FIRST MI LAST):** Samantha
**CHILD 1 DATE OF BIRTH:** 09/22/05

**CHILD 2 NAME (FIRST MI LAST):**
**CHILD 2 DATE OF BIRTH:** __/__/__

**CHILD 3 NAME (FIRST MI LAST):**
**CHILD 3 DATE OF BIRTH:** __/__/__

1

1. Complete information should be provided for each purchase. If additional space is required, please attach additional pages.

2. Eligible products must have been:

   - Manufactured, sold and/or distributed by Philips Electronics North America Corporation, including Avent America, Inc.; and
   - Purchased by you or received as a gift.

3. Eligible products are:

   - Polycarbonate plastic baby bottles that contained Bisphenol-A purchased or received as a gift from January 1, 2001 through the present, under the Avent and Philips Avent brand names; and
   - Training or "sippy" cups that contained Bisphenol-A purchased or received as a gift from January 1, 2001 through the present, under the Avent brand name.

| Type of Original Product and Brand Name (Mark One and Provide the Brand and Product Name) | How Did You Obtain Product? (Mark One) | If Received as a Gift, Provide Name of Original Purchaser OR If Gave as a Gift, Provide Name of Gift Recipient | Approximate Date of Purchase or Receipt of Gift (MM/DD/YY) | Purchased BPA-Free Product Replacement (Mark One) |
|---|---|---|---|---|
| ○ 4 oz Baby Bottle ● 7 oz Sippy Cup<br>○ 9 oz Baby Bottle ○ 9 oz Sippy Cup<br>○ 11 oz Baby Bottle ○ Other<br>Brand Name: Avent<br>Product Name: First Years | ○ Purchased and Kept<br>● Received As Gift<br>○ Purchased and Gave as Gift | Steven Cope | 9/22/08 | ○ YES ● NO<br>If Yes,<br>○ Sippy Cup<br>○ Baby Bottle |
| ● 4 oz Baby Bottle ○ 7 oz Sippy Cup<br>○ 9 oz Baby Bottle ○ 9 oz Sippy Cup<br>○ 11 oz Baby Bottle ○ Other<br>Brand Name: Avent<br>Product Name: Feeding Bottle | ○ Purchased and Kept<br>● Received As Gift<br>○ Purchased and Gave as Gift | Steven Cope | 9/22/05 | ○ YES ● NO<br>If Yes,<br>○ Sippy Cup<br>○ Baby Bottle |
| ○ 4 oz Baby Bottle ○ 7 oz Sippy Cup<br>○ 9 oz Baby Bottle ○ 9 oz Sippy Cup<br>○ 11 oz Baby Bottle ○ Other<br>Brand Name:<br>Product Name: | ○ Purchased and Kept<br>○ Received As Gift<br>○ Purchased and Gave as Gift | | / / | ○ YES ○ NO<br>If Yes,<br>○ Sippy Cup<br>○ Baby Bottle |

2

## CERTIFICATION

I certify that:

1. For any sippy cup purchase listed above, was the sippy cup top a 2-piece or 3-piece configuration?    ● 2-PIECE    ○ 3-PIECE

2. No one in my household is using the product(s) listed above as a result of my concern about the presence of BPA. (Checking "NO" does NOT prevent you from receiving a voucher(s) if your claim is otherwise valid.)    ● YES    ○ NO

3. I have never obtained any refund from any retailer for any product(s) listed above. (MarK "YES" if you did NOT receive any refund.)    ● YES    ○ NO

I declare, under penalty of perjury under the laws of the United States, that all the information submitted on this claim is true and correct to the best of my knowledge.

PRINT NAME: M A X   C A R A P I A

SIGNATURE: Max Carapia

DATE: 04 / 11 / 11