IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| In re: BISPHENOL-A (BPA) POLYCARBONATE PLASTIC PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 1967 Master Case No. 08-1967-MD-W-ODS Applies To All Cases |

ORDER AND OPINION DENYING MOTIONS FOR CLASS CERTIFICATION

I.  INTRODUCTION

This case arises from Defendants' use of Bisphenol-A (2, 2-bis (4-hydroxyphenly)-propone), more commonly referred to as "BPA," in baby bottles and sippy cups.  On August 13, 2008, the Judicial Panel on Multidistrict Litigation ("the Panel") centralized fourteen cases in this district and assigned the case to the undersigned.  Thereafter, the Panel has continued to transfer cases from around the country.  In addition, a number of cases were filed in this District; the Panel does not address intra-District transfers, and on its own the Court has combined those cases with the multidistrict case.  At present, there are approximately twenty-four cases left in this litigation and there are six remaining defendants: Handi-Craft Company ("Handi-Craft"), Gerber Products Company ("Gerber"), Playtex Products, Inc. ("Playtex"), Evenflow Company, Inc. ("Evenflow"), Nalge Nunc International Corporation ("Nalge Nunc"), and RC2 Corporation ("RC2").

Plaintiffs seek certification of various classes.  In support, they have filed (1) an Omnibus Motion to Certify and (2) six separate motions to certify for each of the remaining Defendants.  In connection with their Omnibus Motion, Plaintiffs also provided a Trial Plan and Proposed Instructions.  The Court has reviewed all of these materials and, having done so, denies all motions (Docs. # 539, 544, 546, 548, 550, 552, and 554) to certify a class.[1]

---

[1]In light of the parties' settlement, the Court also finds the motion to certify a class against Avent America/Phillips (Doc. # 540) is moot.  All requests for oral argument are denied.

Plaintiffs' primary position posits certification of three multi-state classes.[2] In the alternative, they ask the Court to certify separate state-wide classes against each of the Defendants. In the interest of simplicity, the Court will address Plaintiffs' alternative position first. However, a cautionary word is in order: the Court does not deem it necessary to address each and every contention raised by the parties and instead has focused on the issues it deems most significant. The Court's silence with respect to an issue should not be construed as an opinion of any sort.

## II. PLAINTIFFS' ALTERNATIVE PROPOSAL – SINGLE STATE CLASSES

Plaintiffs' alternative proposal is to certify separate classes comprised of those who purchased a defendant's product in a particular state, based on the states where the named plaintiffs purchased their products. For example, with respect to Defendant Playtex, Plaintiffs propose "separate statewide unjust enrichment classes in the states where Named Plaintiffs purchased or acquired their products – Arkansas, California, Georgia, Kansas, Missouri, South Carolina and Washington." Docket # 555 at 31. Plaintiffs do not offer much explanation as to why this alternative approach satisfies Rule 23. All that is said is that the "same reasons" that support Plaintiffs' multi-state plan will also support certification in individual states – but, to consider the Plaintiffs' alternative position means the Court has rejected the multi-state groupings, so those "same reasons" are not necessarily helpful in ascertaining the viability of the single-state classes.

More importantly, the alternative request misapprehends the transferee court's role in an MDL. When pretrial proceedings have concluded, the cases transferred by the MDL Panel are to be remanded to the originating court. 28 U.S.C. § 1407(a). The transferee court lacks the authority to transfer the case to itself for trial purposes. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). The only

---

[2]While this Order refers to "states," the reader is reminded that the District of Columbia is a separate jurisdiction, so there are a total of fifty-one jurisdictions potentially involved.

2

way the transferee court could effectively conduct a trial (which necessarily happens after pretrial proceedings) in the transferred cases is if the transferee court concludes that all such cases should be part of a class action. This does not mean, however, that *all* pretrial matters need to be – or even should be – resolved by the transferee court. Matters related to the administration of individual trials – or matters that relate to only a few cases – should be decided by the court that will actually conduct the trial. The purpose of an MDL is to foster efficiency by having a single judge address and decide issues that will apply to all (or at least a significant number of) the transferred cases. Plaintiffs essentially ask the undersigned to decide, for instance, that a class of Washington consumers should be certified for trial in the Western District of Washington. This issue affects only a few cases, and relates to the manner in which the case will be tried. It is not an issue that the undersigned should dictate to the transferor courts, but is an issue that is more appropriately decided by the judges charged with presiding over the trial. Therefore, Plaintiffs' request to certify individual state-wide classes is denied without prejudice.

### III. PLAINTIFFS' PRIMARY POSITION – MULTI-STATE CLASSES

#### A. Introduction

Plaintiff's principal position involves the certification of multi-state classes, and the Court's analysis begins by recognizing the legal framework created by Rule 23. Rule 23(a) sets forth four prerequisites all class actions must satisfy. The class must then qualify under one of the categories described in Rule 23(b). Plaintiffs bear the burden of demonstrating Rule 23's requirements are satisfied. E.g., Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). The Court is required to conduct a "rigorous analysis" that entails looking behind the pleadings and ascertaining the nature of Plaintiffs' claims as well as the nature of the evidence. The Court is not permitted to resolve the merits, but "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the

plaintiff's underlying claims."  Wal-Mart Stores, Inc. v. Dukes, No. 10-277, slip op. at 10 (June 20, 2011); see also Elizabeth M. v. Montenez, 458 F.3d 779, 786 (8th Cir. 2006).

The Court's discussion will focus on three of the components required for certification: commonality, predominance, and superiority.  The Court has elected to focus on these issues because they present the most insurmountable obstacles to Plaintiffs' request and because they are related issues.  The Court will also address one issue related to adequacy, but notes the issue is one that (unlike the others) theoretically can be cured.

Commonality is one of the four prerequisites required for all class actions, and it exists when "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Predominance is a related concept required for classes certified under Rule 23(b)(3), and exists if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."  The predominance requirement explicitly requires a comparison between common issues and individual issues in order to ascertain whether the common issues predominate, and thus requires the Court to identify the common issues and the individual issues presented by the case.  See, e.g., Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1029 (8th Cir. 2010).  Rule 23(a)(4) requires, in all classes, that "the representative parties will fairly and adequately protect the interests of the class."  Finally, Rule 23(b)(3) also requires the court find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3) provides a non-exhaustive list of factors to consider when evaluating whether a class action is superior to alternatives, including (as particularly relevant to this case) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the likely difficulties in managing a class action."

B.  Commonality

*1.  Common Issues of Law*

The first area of supposed commonality involves the governing law.  Plaintiffs propose asserting claims for unjust enrichment, violation of state consumer protection statutes, and breach of warranty.  They support their multi-state classifications by relying on their legal research, suggesting the laws in the states they seek to include are sufficiently similar that they can be grouped together.  In summary, Plaintiffs initially proposed the following:

- For unjust enrichment claims, Plaintiffs eliminated four jurisdictions because they require a connection between the plaintiff's impoverishment and the defendant's benefit and an additional two jurisdictions because they require circumstances that would put the defendant on notice the plaintiff expects compensation.  The remaining forty-five jurisdictions were divided into two sub-categories: twenty-three that follow the Restatement (First) of Restitution, and twenty-two that follow the Restatement but add a requirement that the defendant know about the benefit conferred by plaintiff.
- For claimed violations of state consumer protection laws, Plaintiffs eliminated:
    - Three states that require a preexisting determination that the conduct in question violated the law
    - Three states that require a showing of reliance in omission cases
    - One state that allows only equitable relief
    - One state that does not permit a private right of action
    - Two states, because they were not included in the Master Complaint
    - One state, because its law is unique in some unspecified aspect
  
  Plaintiffs contend consumer protection statutes in the remaining forty jurisdictions are all substantially the same.  This class is not proposed with respect to RC2; this matter will be discussed when the Court addresses the adequacy issue.
- For claimed breaches of the implied warranty of merchantability, Plaintiffs eliminated twenty jurisdictions that require privity between the parties and

5

another nine jurisdictions that require pre-suit notifications.[3] They seek certification of a class of all remaining states, alleging their laws regarding this claim are the same. This class is not proposed with respect to RC2 or Nalge Nunc; this matter will be discussed when the Court addresses the adequacy issue.

There are many problems with Plaintiffs' proposal, all of which stem from the immense difficulties involved in insuring their conclusions about the vagaries and commonality of state law are correct. The difficulties involved in comparing and contrasting all of the nuances of the laws of fifty-one jurisdictions is undeniably complicated. Several courts have indicated the mere need to engage in such an analysis – and the exponential increase in the potential grounds for error – demonstrates a class action is inappropriate. E.g., Cole v. General Motors Corp., 484 F.3d 717, 724-26 (5th Cir. 2007); Klay v. Humana, Inc., 382 F.3d 1241, 1267-68 (11th Cir. 2004); Castano v. American Tobacco Co., 84 F.3d 734, 751-52 (5th Cir. 1996); In re American Medical Systems, Inc., 75 F.3d 1069, 1085 (6th Cir. 1996); In re Sch. Asbestos Litig., 789 F.2d 996, 1010 (3d Cir. 1986). The fact that some district courts have attempted this endeavor does not mean all courts must, and a decision by another district court that the states' laws in a particular area are similar is not binding and is only as persuasive as the analysis provided therein (and then only insofar as it relates to the facts and circumstances of that particular case).

The particulars of this case present good reasons for rejecting Plaintiffs' analysis of state laws. First, Plaintiffs have admitted their initial analysis was not completely correct. Plaintiffs conceded Defendants' opposition was at least partially correct, and conceded that (1) three states should be moved from one unjust enrichment subclass to the other and (2) uncertainty with respect to the laws of six states required that they be removed from the consumer protection class. Docket # 716 at 32, 47 n.41-42.

---

[3] Plaintiffs indicated they actually eliminated ten states that require pre-suit notification, but one of those states – Oregon – was already eliminated due to the privity requirement.

This inevitably raises the question: are there other incorrect determinations in Plaintiffs' proposal? For instance, the parties have raised legitimate legal disputes as to whether

- claims for unjust enrichment in Missouri and Colorado require proof the defendant appreciated the benefit;
- claims for unjust enrichment in California, the District of Columbia, Illinois, Indiana, New Hampshire and Oklahoma require a showing of misconduct;
- claims for unjust enrichment in Connecticut require privity;
- the consumer protection statutes in Georgia, Minnesota, Nevada, and New Hampshire require proof of reliance;
- the extent to which the Missouri Court of Appeals' decision in *Plubell v. Merck & Co.*, 289 S.W.3d 707 (Mo. Ct. App. 2009), applies in other jurisdictions, as suggested by Defendants' Reply Suggestions (Doc. # 716 at 47-48);[4]
- the "safe harbor" provisions in the consumer protection statutes of FIroida, Arkansas, Connecticut, Georgia, Illinois, and Washington apply; and
- South Carolina, Louisiana, Massachusetts, Nevada, and Minnesota would apply the "economic loss doctrine" to preclude warranty claims.[5]

*This list is not intended to be exhaustive.* It is merely a sampling of the legal disputes that the Court is unable to resolve without delving into a legal inquiry more extensive than has been provided by the parties in order to ascertain (or predict) the holdings of

---

[4] The Court doubts any other jurisdiction has taken notice of, much less agreed with, this decision of an intermediate appellate court.

[5] Plaintiffs argue this issue was resolved by the Court in its November 9, 2009, Order (Docket # 261). This is incorrect: the Court addressed the economic loss doctrine as a general proposition and did not consider the doctrine's potential application in the context of any particular state's law. Plaintiffs also argue the UCC would not apply the economic loss doctrine, but the question is not what the UCC provides but what each state's law provides.

the highest courts in these jurisdictions.  See, e.g., United Fire & Cas. Ins. Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003).

Defendants cannot thwart certification simply by tossing out imagined or slight variances in state laws.  The Court has examined the authorities presented by the parties and concludes that neither side has clearly established the correctness of their position and that further legal inquiry is required.  The consequences of this conclusion fall harder on Plaintiffs because it is their burden to demonstrate the common issues of law.  On some issues, it appears Plaintiffs have the better argument.  On others, it appears Defendants are correct.  Some issues are too close to call at this stage.  Regardless, the existence of these (and other similar) disputes is significant for two reasons.  First, they preclude the Court from holding that the groupings proposed by Plaintiffs satisfy Rule 23(a)(2)'s commonality requirement.  Second, they present significant manageability concerns, as certification would require the Court to predict or ascertain the law in a multitude of jurisdictions.

Even if Plaintiffs have correctly grouped the states' laws, the application of those laws may be different even if they are similar or stated with identical language.  To illustrate how this problem manifests, the Court quotes from Plaintiffs' summary of the nature of their claims:

> Plaintiffs have never alleged that the FDA banned BPA or argued that any government agency has definitively concluded that BPA in baby products is unsafe.  To meet the elements of their claims, Plaintiffs do not have to prove this.  Rather, the actual underlying theory of Plaintiffs' case is that, during the class period, there existed a serious scientific debate or controversy regarding the safety of BPA and that all Defendants were aware of this controversy at the start of the relevant class periods.

Docket # 716 at 7.  In short, Defendants allegedly breached duties to consumers by failing to advise them that the product contained BPA, a substance that the FDA approved for use but that was the subject of ongoing scientific discussion or

8

controversy.[6] This gives rise to the following question: assuming every state requires the disclosure of material facts, would every state regard *this* fact as material? Plaintiffs do not acknowledge, much less directly answer, this issue – yet this issue permeates each of Plaintiffs' claims. With respect to unjust enrichment, Plaintiffs' proposed verdict director (Instruction No. 26) asks the jury to determine whether "it is unjust to allow the defendant to retain the benefit under the circumstances." The "circumstance" of the scientific controversy's existence is not necessarily the sort of circumstance (particularly in light of the FDA's approval of BPA) that would universally be regarded as requiring disclosure. A state could reasonably conclude that, as a matter of law, the failure to disclose these facts does not render retention of the benefit unjust. Just because one state would allow the claim to proceed does not mean that all of them would, even if they all utilize essentially the same standards.[7] With respect to consumer protection claims, Plaintiffs concede that one of the elements requires proof that the omission was material. Even if materiality is purely objective (and does not involve consideration of each individual's subjective motivations and concerns), the Court is not convinced that

---

[6]As will be discussed at various junctures, this narrow statement of Plaintiffs' claim is accompanied by a variety of arguments and issues that are simply not related. For instance, Plaintiffs support their certification request by alleging that Defendants presented faulty data to the FDA, that BPA can cause adverse health effects, and there is a consensus that BPA is inappropriate for use in products containing food. Even if true, none of these facts relate to Plaintiffs' formulation of their claims, which depends only on the *existence* of a scientific debate, not its cause, content, or outcome. In the face of this conflict, the Court has analyzed the certification request based on Plaintiffs' explanation/description of their claim and not the extraneous facts mentioned in their Briefs.

[7]As the Supreme Court recently said in the context of identically-phrased federal and state procedural rules,

> Federal and state courts, after all, can and do apply identically worded procedural provisions in widely varying ways. If a State's procedural provision tracks the language of a federal Rule, but a state court interprets that provision in a manner federal courts have not, then the state court is using a different standard . . . .

Smith v. Bayer Corp., No. 09-1205, slip op. at 9 (June 16, 2011).

every jurisdiction would agree (or disagree) the existence of the scientific debate is material and thus had to be disclosed. Finally, Plaintiffs' Proposed Instruction No. 18 – the verdict director for the breach of warranty claim – requires the jury to find that the goods were not merchantable, which is described parenthetically as "defective." The Court is confident some states would hold that a product approved for sale by the FDA is merchantable.

Without specifically addressing the issue, Plaintiffs have effectively presumed that every state whose law, for instance, follows the Restatement (First) of Restitution has the same law. As facially reasonable as this conclusion appears, it is only correct in the abstract. For commonality to exist, the Court must be persuaded not only that each state's law is the same, but that it would be applied in the same manner. The latter component of the inquiry has not been addressed.[8]

Ultimately, the Court cannot conclude that there are common issues of law. The Court cannot simply accept Plaintiffs' analysis of the various states' laws, and conducting the necessary inquiry is an unmanageable task. Compounding the difficulties is the potential that states with similar-sounding laws will apply them differently. The Court doubts Plaintiffs' proposed groupings are accurate, and further doubts that an accurate grouping can be created in the context of this case's facts and claims.

### 2. *Common Issues of Fact*

Plaintiffs also suggest there are many facts in common for all class members. After briefing was completed, the Supreme Court issued its opinion in *Wal-Mart Stores, Inc. v. Dukes*, which addressed, *inter alia*, the issue of commonality.

---

[8] Plaintiffs have also augmented their claim of commonality by pointing to the Court's November 9, 2009, Order (Docket # 261) at 18, where the Court differentiated this case from others because the condition complained of – the presence of BPA – was certain. Plaintiffs' claims have changed slightly: now, they allege their claim rests not on demonstrating that BPA is unsafe but rather that there is a controversy about the FDA's conclusion that BPA is safe. This is a far different matter.

> Commonality requires the plaintiff to demonstrate that the class members
> have suffered the same injury. This does not mean merely that they have
> all suffered a violation of the same provision of law. . . . Their claims must
> depend upon a common contention . . . that is capable of classwide
> resolution – which means that determination of its truth or falsity will
> resolve an issue that is central to the validity of each one of the claims in
> one stroke.

Dukes, slip op. at 9 (quotations omitted). Even before Dukes, the Eighth Circuit held that commonality required an issue (1) linking the class members (2) that was substantially related to the litigation's resolution. DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995), cert. denied, 517 U.S. 1156 (1996); Paxton v. Union Nat'l Bank, 688 F.2d 552, 561 (8th Cir. 1982), cert. denied, 460 U.S. 1083 (1983).

> If, to make a prima facie showing on a given question, the members of a
> proposed class will need to present evidence that varies from member to
> member, then it is an individual question. If the same evidence will suffice
> for each member to make a prima facie showing, then it becomes a
> common question.

Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005). This case presents some common issues; that is, these facts are the same for each class member, can be proved with the same evidence, and their resolution furthers the litigation's advancement:

- The nature and content of any particular Defendant's advertising and other disclosures;
- Each Defendant's knowledge, over time, about the science regarding BPA;
- The fact that certain products contained BPA; and
- The status of scientific knowledge (i.e., the particulars of the scientific debate) over time.[9]

---

[9] Plaintiffs list the BPA's health effects as a common issue, but it does not seem to be an issue that needs to be decided given Plaintiffs' contention that their claims depend on the existence, not the outcome, of the scientific debate. While it is a common question (in that the answer is the same for all class members), the Court is not convinced it has a role in this case.

Other facts Plaintiffs describe as "common" clearly are not. For instance, "Plaintiffs' testimony regarding the purchase of their Baby Products" is not common for all class members. One Plaintiff's actions, decisions, knowledge, and thought processes are unique to that Plaintiff. While this question must be answered for each Plaintiff, the question will not be proved with the same evidence or have the same answer for each Plaintiff. Even the simple question "Did each Plaintiff purchase a product manufactured by Defendant?" is not a common question because it is not capable of classwide resolution as required by Dukes.

In contrast to the common issues, there are many critically important individual issues. First and foremost among these is the issue of damages. At various points Plaintiffs have expressed the view that damages for unjust enrichment can be measured simply by calculating the benefit retained by Defendants. See, e.g., Plaintiffs' Proposed Instruction No. 28. Plaintiffs contend they

> all 'benefitted,' if at all, in the same manner from purchasing polycarbonate products, and they all suffered the same economic 'harm' from purchasing polycarbonate products. In terms of the unjust enrichment claim, the relevant inquiry is not on 'whether, and the extent to which, each class member used Defendants' products,' (Defs' Omnibus at 52), but rather on whether Defendants' retention of the benefits conferred by Plaintiffs is unjust. *This will not be an individualized inquiry*, as each member purchased or used the polycarbonate products and Defendants' omissions were perpetrated in a standardized manner."

Docket # 716 at 44 (emphasis supplied).

The Court disagrees with Plaintiffs' analysis. As a general proposition, determining whether a defendant's retention of the benefit (i.e., the purchase price for the goods) is "unjust" requires considering what a particular plaintiff received in exchange for bestowing that benefit. As discussed in prior Orders, if a person completely used a product without encountering ill-effects or other difficulties and can only declare after the fact that s/he would not have purchased the goods had the truth been known, such a person may not have "unjustly" enriched the seller. Some jurisdictions seem to explicitly offset the plaintiff's benefit and the defendant's

12

enrichment.  E.g., Vigiletti v. Sears, Roebuck & Co., 838 N.Y.S.2d 785 (N.Y. App. Div. 2007) ("plaintiffs failed to state a cause of action to recover damages for unjust enrichment because there was no allegation that the benefits that the members of the plaintiffs' class received were less than what they bargained for"); MC Baldwin Financial Co. v. DiMaggio Rosario & Veraja, LLC, 845 N.E.2d 22, 30 (Ill. Ct. App. 2006) (citing prior decisions (and, interestingly, the draft of the Restatement (Third) of Restitution and Unjust Enrichment) for proposition that restitution consists of "all monies paid to defendants on the contract minus any benefit [plaintiffs] received"); Romero v. Bank of the Southwest, 83 P.3d 288, 297 (N.M. Ct. App. 2003) (noting that damages suffered by defendant may reduce the award of restitution); see also Landmark Land Co., Inc. v. FDIC, 256 F.3d 1365, 1373 (Fed. Cir. 2001).  Other states emphasize that whether the defendant's enrichment is unjust is a factual inquiry that requires consideration of all the circumstances.  E.g., Redd Iron, Inc. v. International Sales & Services Corp., 200 P.3d 1133, 11369 (Colo. Ct. App. 2008); see also Far West Fed. Bank, S.B. v. Office of Thrift Supervision, 119F.3d 1358, 1367 (9th Cir. 1997); Resolution Trust Corp. v. Federal Savings & Loan Ins. Corp., 25 F.3d 1493, 1505 (10th Cir. 1994).  Clearly, those circumstances would include the fact that the consumer received the full (or partial) benefit of the bargain.

Plaintiffs correctly point out that individualized damage inquiries do not mean there are no issues in common, and that predominance is not destroyed by the mere existence of individual issues.  However, the individualized damage inquiries (along with all other individual issues) have to be compared to the common issues to determine whether the common issues predominate over the individual issues.  Plaintiffs also point to the Court's prior observation that a jury could conclude that a person who completely consumed their product before learning the truth would be entitled to a full refund – but then again, a jury might not so conclude (or a particular state's law might not permit such a conclusion).  As the Court stated previously, "the extent of any benefit received by Plaintiffs would be a factor in determining whether and to what extent Defendants' retention of money is unjust – but this is a matter for a jury to resolve."  Docket # 261 at 21.  Not all Plaintiffs received the same benefit, so the extent of any such benefit is not

13

a common issue. Not only do the states utilize varying measures of damages, but in at least some (and potentially most) states the measure of damages is an individualized inquiry.[10]

This issue also arises with respect to Plaintiffs' other claims. Plaintiffs' Proposed Instruction No. 24 would instruct the jury that in awarding damages on the consumer protection claims, it "must determine what amount of money will fully and fairly compensate plaintiffs for their actual damages resulting from defendant's actions." Assuming this instruction is a correct statement of law in all of the jurisdictions Plaintiffs seek to include, it explicitly requires the jury to consider the benefits received by each Plaintiff. Similarly, Plaintiffs' Proposed Instruction No. 20 would tell the jury damages for the breach of warranty claim is "the amount of money which will reasonably compensate plaintiffs for damages arising from the breach of implied warranty. The measure of damages . . . is the difference . . . between the value of [the product] accepted and the value [of the product] would have had if [it] had been as warranted." The value of the product accepted is not universal: a consumer who used a product then threw it away when his/her child grew too old for it obtained far more value than a person who disposed of the product upon immediately learning about the BPA controversy and before the child grew too old for it. In addition, the Court already held that individuals who received the full benefit of the bargain could not assert claims for breach of warranty.

Another individual issue in this case will be each Plaintiff's knowledge about the BPA controversy. Defendants contend – and the Court agrees – that a consumer's knowledge of BPA's existence and the surrounding controversy is legally significant. Knowledge of the controversy carries with it knowledge of the likelihood (or at least possibility) that a plastic baby bottle contained BPA. A consumer who knew about the

---

[10]The Court is not persuaded by the expert opinions Plaintiffs offered on this matter, including Dr. Richard Rapp, because they are not consistent with the analysis dictated by the governing law. Moreover, the Court is not persuaded that Dr. Rapp's extrapolations are reliable – but there is no need to consider this issue in light of the preceding sentence.

14

controversy and also knew that the bottle s/he purchased contained BPA would have all the knowledge Plaintiffs allege should have been disclosed, and will have tremendous difficulty convincing a jury that the seller was unjustly enriched. Similarly, a consumer who knew about the controversy and exhibited no concern about whether the product purchased contained BPA may have difficulty convincing a jury that the seller was unjustly enriched. This same analysis holds true for claims under consumer protection statutes.

Plaintiffs do not really contest the relevance of these inquiries as a matter of law. Instead, they contend these matters are not relevant because the class definition does not include knowledge as a criterion. This response makes no sense. As much as Plaintiffs describe this as a case about Defendants' marketing and failure to divulge information, the claims Plaintiffs are asserting require proof that people were somehow affected or damaged by those omissions. Plaintiffs also suggest a consumer's knowledge is relevant only to damages. This is incorrect: a person who knew about the BPA controversy at the time of purchase will not be in a good position to claim that s/he unjustly enriched the seller. And, even if knowledge is a "damage issue," it is still an individual issue that must be considered in evaluating predominance even if it relates to damages. Individual issues relating to damages do not automatically bar certification, but they also are not completely ignored. E.g., In re St. Jude Medical, Inc., 522 F.3d 836, 840-41 (8th Cir. 2008) (individual issues related to appropriate remedy considered in evaluating predominance); Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc., 339 F.3d 1001, 1012 (8th Cir. 2003), cert. denied, 541 U.S. 973 (2004) (individual issues related to damages predominated over common issues); see also In re Wilborn, 609 F.3d 748, 755 (5th Cir. 2010) ("Plaintiffs' claims here fail under the predominance and superiority inquiries because individual issues for each class member, particularly with respect to damages, override class concerns when we consider how the case must be tried."). Nothing in Rule 23 dictates that individual issues relating to damages are to be ignored or have no role in evaluating Rule 23(b)(3)'s predominance requirement. Cf. Dukes, slip op. at 23-24 ("[I]t is the Rule itself, not the Advisory Committee's description of it, that governs.").

### C. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). This necessarily requires the Court to compare the common issues to the individual issues, e.g., Avritt, 615 F.3d at 1029; Blades, 400 F.3d at 566-67; see also Amchem, 521 U.S. at 624, and the outcome of the comparison in this case has been foreshadowed.

The governing law is not common among the class members, so varying legal inquiries and standards must be applied. These differences could snowball, creating a myriad of additional individual issues. Regardless of the applicable law, there are numerous individual factual issues, including (1) whether, when, and why each class member stopped using Defendants' products, (2) the extent of each class members' knowledge about BPA at the time of the purchase, and (3) issues relating to damages. The time and other resources necessary to resolve the individual issues in a single forum, in the context of a single case, in front of a single jury, is staggering. In contrast, the common factual issues are relatively easy to prove: the content of each Defendant's disclosures, the content of each Defendant's knowledge, and the existence of a scientific debate about BPA's safety. Even if BPA's adverse health effects are a relevant issue, see footnote 9, *supra*, the common issues would not predominate over the individual issues.

### D. Superiority

Two issues are of particular importance in evaluating whether certification of the multi-state classes is superior to alternative methods for resolving the dispute: manageability, and the desirability of concentrating these cases in a single forum. With respect to manageability, the Court has already commented on the immense difficulties involved in confirming or ascertaining the commonality of multiple jurisdictions' laws. In

addition, the need to elicit testimony from every single class member presents significant management obstacles, particularly in light of the demands this would place on a jury to hear a case of such duration. The nature of the classes and their claims also augurs against concentrating them in this forum. Given the amount of damages that are at stake, it is unlikely class members would travel a great distance to present testimony.[11]

Certifying multi-state classes is not superior to the alternatives.[12] First, the fact that these cases are part of an MDL streamlines the discovery process and the resolution of global issues. Once the cases are returned to the transferor courts, relatively little effort will be needed for Plaintiffs to pursue individual suits. There is also the prospect that one or more transferor courts will conclude – without the vagaries of multiple jurisdictions to worry about and a greater familiarity with that state's law – that a statewide class is appropriate.[13]

---

[11] The Court rejects Plaintiffs' argument that proof can be presented in the form of affidavits or surveys. Plaintiffs point to their settlement with one of the Defendants in this case, but parties to a settlement can agree to any procedure they like. Here, each Plaintiff would have to present proof on their individual issues, including the very important issue of damages. This differentiates the case from Brown v. SCI Funeral Servs. of Fla., Inc., 212 F.R.D. 602, 606 (S.D. Fla. 2003), where less significant (and less contestable) issues were addressed.

[12] The Court does not accept the argument, advanced primarily by Defendants Gerber and Playtex, that the availability of refunds is a factor to be considered in this case. Defendants contend their general, "satisfaction guaranteed" policy – which would have provided refunds to any consumers concerned about BPA who also requested a refund – is a superior alternative to class certification. The Court might be more persuaded if Defendants promoted the availability of refunds for those concerned about BPA with at least as much vigor as they promoted (1) the safety of BPA or (2) the existence of BPA-free products. It appears that consumers calling to express concerns about BPA were provided assurances of safety and not refund offers. A generalized policy of satisfying consumers does not strike the Court as a superior alternative – unless, of course, Defendants want to consider publicizing this possibility in a manner similar to that which would be used to notify consumers that a class has been certified.

[13] This should not be taken as suggesting that transferor courts should (or should not) certify statewide classes.

## E. Adequacy

As noted previously, Plaintiffs have elected not to assert consumer protection claims against RC2, and have elected not to assert warranty claims against RC2 and Nalge Nunc. There is no explanation for these omissions, and absent some explanation for Plaintiffs' decision to eschew these claims against these Defendants, the Court cannot conclude these representatives can adequately represent the class.[14]

With respect to Nalge Nunc, this decision appears to have been motivated by the fact that the only two class representatives are from Illinois and Washington – states Plaintiffs have concluded do not support certification of warranty claims. The only class representative posited for RC2 is from Arkansas, which Plaintiffs have also concluded does not support certification of warranty claim but does support certification of a consumer fraud claim – so the failure to assert a consumer fraud claim against RC2 remains unexplained. Regardless, assuming the Court has correctly divined part of the reason for Plaintiffs' decisions with respect to RC2 and Nalge Nunc, the Court must conclude the class representatives are inadequate to protect the class. There is no reason, for instance, that a Missouri consumer should be deprived of his/her opportunity to pursue a warranty claim just because the class representative cannot assert such a claim on his/her own.[15]

## F. Epilogue

---

[14]The Court is not concerned about Plaintiffs' decision not to pursue personal injury claims. In the context of the case, those with personal injuries (the infants who used baby bottles or sippy cups) are unlikely to have actually purchased the products, so they would not be members of the class.

[15]In the context of a related argument, Plaintiffs suggest these claims can be reserved, thereby allowing consumers in these classes to pursue the omitted claims on their own. Assuming this argument is correct, it means the multi-state classes Plaintiffs propose may still lead to a multitude of individual suits – further undercutting the superiority required by Rule 23(b)(3).

In order to maximize the assistance provided to transferor courts, the undersigned intends to delay remand until after one or more cases have been litigated through final judgment. Consistent with the Court's ruling, Plaintiffs shall be permitted an opportunity to persuade the Court that a class of Missouri consumers should be certified. The Court cannot presently assess the propriety of certification because the parties have not focused sufficiently on the particulars of Missouri law in the context of Rule 23. The Court believes Plaintiffs should have sufficient information to present such a request without extraordinary delay. In addition, the parties should begin preparation for bringing one or more cases to trial.

Accordingly, Plaintiffs shall file a motion for class certification seeking certification of one or more Missouri classes on or before August 8, 2011. Defendants shall have until and including September 9, 2011, to respond, and Plaintiffs shall have until and including October 10, 2011, to file Reply Suggestions. Once the Court has determined whether to certify a Missouri class, the parties will be directed to confer and propose a Scheduling Order for either the class (if certified) or one or more individual cases (if a class is not certified).

## IV. CONCLUSION

While there are common issues of fact, the common factual and legal issues do not predominate over the individual factual and legal issues. Multi-jurisdictional classes are also not superior to alternative methods of resolving Plaintiffs' claims. Finally, the class representatives are not adequate insofar as they seek to assert claims against Defendants Nalge Nunc and RC2. For these reasons, all motions to certify classes are denied.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: July 5, 2011    UNITED STATES DISTRICT COURT