IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| In re: BISPHENOL-A (BPA) | ) | MDL No. 1967 |
| POLYCARBONATE PLASTIC | ) | Master Case No. 08-1967-MD-W-ODS |
| PRODUCTS LIABILITY LITIGATION | ) | |

### ORDER AND OPINION DENYING MOTIONS FOR CLASS CERTIFICATION (DOCS. 767, 769, 771, 774, 778)

Plaintiffs move for class certification. The motions are denied.

### I. BACKGROUND

The Court has set forth many of the relevant facts in previous orders. *See, e.g.*, *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, MDL No. 1967, Master Case No. 08–1967–MD–W–ODS, 2011 WL 2634248 (W.D. Mo. July 5, 2011); *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, 687 F. Supp. 2d 897 (W.D. Mo. 2009). On July 5, 2011, the Court denied Plaintiffs' motions to certify multi-state classes but gave Plaintiffs "an opportunity to persuade the Court that a class of Missouri consumers should be certified" (Doc. 754, p. 19).

Plaintiffs now move for certification of three classes of Missouri consumers for each of the following defendants: Handi-Craft Company, Gerber Products Company, and Evenflo Company, Inc. Plaintiffs seek certification for the purpose of pursuing three causes of action: violation of the Missouri Merchandising Practices Act (MMPA), breach of the implied warranty of merchantability, and unjust enrichment. Plaintiffs propose the following class for each defendant:

> All individuals who on or after January 1, 2002, purchased a new polycarbonate baby bottle or training/sippy cup in Missouri that was manufactured, sold or distributed by [Defendant]. Excluded from the class are any persons who obtained any refund from any retailer in connection with such polycarbonate baby bottles or training/sippy cups.

In addition, Plaintiffs seek to maintain a nationwide class action with respect to particular issues.

As with prior orders, the Court does not deem it necessary to address each and every contention raised by the parties and instead has focused on the issues it deems most significant. The Court's silence with respect to an issue should not be construed as an opinion of any sort.

## II. DISCUSSION

### A. Standing

"'A district court may not certify a class . . . 'if it contains members who lack standing.'" *In re Zurn Pex Plumbing Products Liability Litigation*, 644 F.3d 604, 616 (8th Cir. 2011). The familiar requirements for standing are those articulated in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs' proposed class[1] cannot be certified because it includes individuals who have not suffered an injury in fact.[2]

#### (1) Knowledge

Individuals who knew about BPA's existence and the surrounding controversy before purchasing Defendants' products have no injury.[3] Plaintiffs contend each class

---

[1] For simplicity, the Court will refers to Plaintiffs' proposal as a single class.

[2] Plaintiffs cite a district court case from the Ninth Circuit for the proposition that a class may be certified even though it contains uninjured members, *see Galvan v. KDI Distribuation Inc.*, No. SACV 08–0999–JVS (ANx), at *5 (C.D. Cal. October 25, 2011), but Plaintiffs fail to acknowledge that Eighth Circuit law is to the contrary.

[3] There is a potential for the proposed class to include a large number of such uninjured consumers. Plaintiffs admit that "parents often carefully research baby care product purchases" (Doc. 806, p. 18), and Defendants have submitted proof – unchallenged by Plaintiffs – that information regarding BPA was in the media (including popular press such as *20/20*) as early as 1999. Also, Defendants have identified at

2

members' knowledge is irrelevant, but these arguments are foreclosed by *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855 (Mo. 2008). *Coca-Cola* held that consumers who would continue to purchase fountain Diet Coke knowing it contained saccharin could not assert MMPA or unjust enrichment claims against Coca-Cola for the company's failure to divulge its use of saccharin. *Id.* at 862.[4] According to *Coca-Cola*, these consumers "**suffered no injury**." *Id*. Likewise, consumers who knew about BPA and purchased Defendants' products anyway suffered no injury.

The same holds true for Plaintiffs' implied warranty of merchantability claim: "If the purchaser expressly knows the dangers of a product, the seller does not have a duty to warn and there is not an implied warranty of merchantability." Modern Law of Contracts § 9:21 (footnote omitted). Plaintiffs argue the issue of knowledge goes to consumers' *reliance* on Defendants' nondisclosure, and Plaintiffs contend reliance is not an element of their claims. The Court does not agree with the unspoken premise of their argument. The hypothetical posed by the question of reliance – whether the plaintiff would have purchased the product if s/he had known – presupposes the consumer did not know the relevant information. Thus, the question of knowledge logically precedes the question of reliance. Plaintiffs also assert without any authority that "consumers could not detect or ascertain the defects in Defendants' baby products" (Doc. 806, p. 44). But Plaintiffs do not dispute that consumers could – and did – learn about BPA and the likelihood that plastic baby products to be purchased contained BPA. And as the Court previously observed, "A consumer who knew about the controversy and also knew that the bottle s/he purchased contained BPA would have all

---

least one MDL plaintiff who was aware of the BPA controversy when she purchased her products (Doc. 789, p. 24).

[4] The court in *Coca-Cola* expressly stated that, for purposes of its analysis, the plaintiff's unjust enrichment and MMPA claims "need not be distinguished." 249 S.W.3d at 859 n.2.

3

the knowledge Plaintiffs allege should have been disclosed . . . ." (Doc. 754, pp. 14-15). That consumer cannot claim any injury caused by Defendants' conduct.[5]

*(2) Full Use*

Even for those consumers were unaware of BPA when they purchased Defendants' products, they may not have suffered an injury. In an order disposing of motions to dismiss, the Court held that consumers who fully used Defendants' baby bottles and other products without physical harm before learning about BPA suffered no injury and could not assert a claim under consumer protection statutes or for breach of warranty (Doc. 261, p. 20; Doc. 297, p. 1). Plaintiffs contend that, in Missouri, their post-purchase conduct is irrelevant to whether they suffered an injury, citing *Craft v. Philip Morris Companies, Inc.*, 190 S.W.3d 368, 382 (Mo. Ct. App. 2005). In *Craft*, the plaintiff alleged she failed to receive the qualities and economic value of a low tar, low nicotine cigarette, and the court held this allegation "goes to the condition of the product at the time of the purchase transaction" and "does not consider the consumer's manner of use of the product after purchase." *Id.* Plaintiffs also cite other Missouri Court of Appeals cases holding that a consumer can establish s/he suffered ascertainable loss under MMPA with the "benefit of the bargain" rule by showing that s/he purchased a product which had an actual value at the time of purchase that was less than the value of the product as represented. *See, e.g., Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 715 (Mo. Ct. App. 2009). Plaintiffs use these cases to support their theory that post-purchase use is irrelevant because injury occurs, if at all, at the time of purchase.

Plaintiffs essentially are claiming that their purchases, *ipso facto*, caused an economic loss. There is "no authority, in Missouri or otherwise, for this proposition." *Hope v. Nissan North America, Inc.*, No. WD 73299, 2011 WL 4356203, at *20 (Mo. Ct.

---

[5] Plaintiffs suggest modifying the proposed class to exclude these members. But "[a] class is not ascertainable where membership in the class depends on each individual's state of mind." 1 McLaughlin on Class Actions § 4:2 (8th ed.) (footnote omitted).

4

App. 2011).[6] The Eighth Circuit's decision in *Zurn Pex*, also cited by Plaintiffs, does not help them either. *Zurn Pex* stands for the proposition that a product can exhibit a defect even without proof that the product caused external damage. *See* 644 F.3d at 616-18. The evidence in *Zurn Pex* was that plumbing brass fittings developed stress corrosion cracking (the defect) "'as soon as they [were] exposed to domestic water.'" *Id.* at 617. Thus, even those homeowners whose fittings had not yet leaked (and caused external damage) had a claim. *Id.*[7]

Unlike the homeowners in *Zurn Pex*, the full-use plaintiffs are more like the plaintiff who ingested the drug Duract in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 317 (5th Cir. 2002). Duract was reported to cause liver and gastrointestinal damage, but the plaintiff did not allege she had suffered those harms, nor did she allege the drug was ineffective. *Id.* Rather, like Plaintiffs here, the plaintiff in *Rivera* alleged she suffered an "'economic injury'" – that she was denied "'the benefit of the bargain'" – from purchasing a drug that included allegedly inadequate warnings and that had actually caused injury to others. *Id.* at 319. The Fifth Circuit ruled the plaintiff had not suffered an economic injury, reasoning that she "paid for an effective pain killer, and she received just that – the benefit of her bargain. . . . Duract worked." *Id.* at 320 (citation omitted). Likewise, the consumers who purchased one of Defendants' BPA products

---

[6] The Court acknowledges *Hope* made this statement in the context of ruling claims for breach of the implied warranty of merchantability. *See* 2011 WL 4356203, at *20. The Court also acknowledges that, earlier in the case, *Hope* affirmed the trial court's certification of MMPA claims in which the plaintiffs alleged they suffered ascertainable loss because the value of their vehicles was less than as represented. *See id.* at *13-*14. Nevertheless, the Court finds *Hope*'s rejection of *ipso facto* economic loss a clear statement of Missouri law that contradicts Plaintiffs' arguments here.

[7] *Zurn Pex* noted that *O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009) (involving an allegedly defective crib), "never indicated that a child would have to be injured by a crib for a defect to be manifest." 644 F.3d at 617.

5

and completely used them are just like the plaintiff who ingested Duract in *Rivera* – they obtained the full benefit of their bargains and *suffered no loss*.[8]

The Court's reasoning in this case is fully supported by other decisions with analogous fact patterns as well. For example, in *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08–04741 WHA, 2009 WL 1082026, at *4 (N.D. Cal. April 22, 2009), the plaintiff claimed economic injuries from purchasing a drug that was allegedly "'adulterated'" because it was not manufactured according to FDA standards. Like *Rivera*, the plaintiff had ingested the drug with no harm to her, and the Court held she suffered no injury under California law:

> California law does not allow a civil lawsuit to recover the purchase price for medicine consumed by the purchaser which performed as intended with no harm or fear of future harm merely because the consumer would not have purchased it had he or she known that the medicine came from a plant whose quality-control had been compromised.

*Id.* Moreover, as the Court has done here, *Meyers-Armstrong* distinguished those consumers who *had not* consumed the product:

> *If the pills had not been consumed, the consumer might possibly have a claim for a refund.* But after consuming the pills and obtaining their beneficial effect with no downside, the consumer cannot get a refund on the theory that the pills came from a source of uncertain quality. This does not mean the manufacturer will go scot free. A criminal prosecution might lie. A regulatory shutdown of the plant might be in order. But the civil law should not be expanded to regulate every hypothetical ill in the absence of some real injury to the civil plaintiff.

---

[8] Plaintiffs argue this holding creates an incentive for defendants to withhold information in the hope that consumers will completely use a product before the withheld information is discovered. This alleged incentive is more imagined than real. Defendants who withhold material information always run the risk that doing so will expose them to liability by causing ascertainable loss to a consumer. Defendants who wish to avoid liability are more likely to do so through disclosure, not nondisclosure.

6

*Id.* (emphasis added; footnote omitted); *see also In re McNeil Consumer Healthcare, Marketing and Sales Practices Litigation*, MDL No. 2190, 2011 WL 2802854, at *14 (E.D. Pa. July 15, 2011) (citing *Rivera* and *Meyers-Armstrong* and holding purchase of product alone could not establish injury in fact; "the cases reveal that plaintiffs who have purchased Recalled Subject Products are not in a monolithic category").

The Court adheres to its prior holding that those consumers who fully used Defendants' products cannot assert MMPA or warranty claims. And the Court expands that holding to include Plaintiffs' unjust enrichment claims. In the context of applying various states' laws, the Court previously ruled that the extent of a consumer's use of a product was relevant to an unjust enrichment claim, but not dispositive (Doc. 261, p. 21; Doc. 754, 12-14). But in Missouri "[t]here can be no unjust enrichment if the parties receive what they intended to obtain." *American Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 293 (Mo. Ct. App. 2003) (citation omitted). Plaintiffs assert none of the proposed class members received what they intended to obtain because Plaintiffs were not provided material information before making their purchases. But Plaintiffs were bargaining for baby products at the time of transaction, not a certain type of information. Those who fully used the products before learning about BPA received 100% use (and benefit) from the products – they "receive[d] what they intended to obtain" – and they have no claim for unjust enrichment.

### B. Rule 23(b)(3)

With uninjured individuals excluded, the Court can now determine what those consumers with standing must prove for class certification. In addition to meeting the requirements under Fed. R. Civ. P. 23(a), a class action must qualify under one of the categories described in Rule 23(b). For their Missouri class, Plaintiffs seek certification under Rule 23(b)(3), which is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and

7

efficiently adjudicating the controversy." In the following analysis, the Court bypasses Rule 23(a) and focuses on what it deems the most significant aspects of Rule 23(b)(3).

*(1) Predominance*

"When deciding whether common issues predominate over individual issues under Rule 23(b)(3), the court should conduct a 'rigorous analysis' including an 'examination of what the parties would be required to prove at trial.'" *Zurn Pex*, 644 F.3d at 611 (citation omitted). First, for each of Plaintiffs' claims, they will need to prove that they purchased one of Defendants' baby bottles or sippy cups. *See* Mo. Ann. Stat. § 407.025.1 (MMPA); MAI 25.08 (implied warranty of merchantability); *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo. Ct. App. 2000) (unjust enrichment).[9] Individualized proof will be necessary for this. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (describing what is required for issue of law or fact to be considered "common" under Rule 23); *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (same). Plaintiffs assert their testimony regarding the purchase of Defendants' products is evidence common to the proposed class (Doc. 780, p. 3), but the Court has already held otherwise in denying certification of multi-state classes (Doc. 754, p. 12), and Plaintiffs provide no persuasive reason for the Court to change its holding.

Plaintiffs' main argument is that common issues predominate over individual issues because Defendants "uniformly" failed to disclose material information to all Class members (Doc. 806, p. 17, 23, 25, 28, 50). To the extent Plaintiffs' proof of Defendants' omissions depends on "[t]he nature and content of any particular

---

[9] Plaintiffs assert that they "have essentially already proven the first element of their unjust enrichment claim . . . by defining the class as including only those consumers that purchased one of Defendants' BPA products." But the question becomes how to determine who is in the class, which would require each class members' individualized proof.

8

Defendant's advertising and other disclosures," (Doc. 754, p. 11), the Court has held – and continues to hold – that this is a common issue of fact.[10]

But Plaintiffs' proof of *what* Defendants failed to disclose will not be common for all class members, at least with respect to the scientific debate concerning BPA. Defendants can only be held liable for failing to disclose facts they knew or should have known. *See* 15 Mo. Code of State Regulations 60-9.110(3) (defining "[o]mission of a material fact" in context of MMPA as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her"). Class-wide evidence cannot be used to show what Defendants knew or should have known because their knowledge and the available information about BPA changed during the class period. "This is a pertinent observation." *Hope*, 2011 WL 4356203, at *14 (addressing argument that no class-wide proof of defendant's knowledge existed because defendant had different levels of knowledge over class period).

Plaintiffs argue they will be able to use class-wide evidence to prove Defendants' liability by showing Defendants' nondisclosure of information from the very start of the class period (January 1, 2002). Plaintiffs' argument could have merit if they were seeking to hold Defendants liable solely based on the content of the scientific debate from the very start of the class period, but they are not. Plaintiffs' Proposed Trial Plan states they intend to show Defendants' awareness and nondisclosure of scientific studies through Dr. Douglas Schoen, whose report discusses studies from 1997 to at least 2006 (Doc. 557, p. 8). Proof that Defendants failed to disclose information that came into existence in 2006 (and was known or should have been known by Defendants at that time) does not prove – nor could it prove – Defendants' liability before then. Plaintiffs' proof of Defendants' nondisclosures is not common to all class members.

---

[10] Defendants argue the evidence required to prove the nature and content of their disclosures will not be identical because "[d]ifferent class members saw different advertisements (or none at all) or were exposed to knowledge of the controversy" (Doc. 789, p. 30). But Plaintiffs can prove Defendants failed to disclose the presence of BPA without proving what each individual class member saw or knew.

9

A similar problem exists with respect to materiality. A material fact for MMPA liability includes "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision." 15 Mo. Code of State Regulations 60-9.010(1)(C). Even if this is an objective inquiry, that does not mean it can be proven with class-wide evidence. Assuming Plaintiffs can prove that a reasonable consumer would consider a 2006 study showing BPA's effect on the endocrine systems of Prosobranch snails to be material, that would not be probative of Defendants' liability in 2002. And just because materiality is an objective inquiry does not mean it is to be determined in a vacuum, especially when the undisclosed fact is a scientific debate or controversy. A reasonable consumer may be less likely to consider a scientific study from 1997 significant after that consumer learns that federal agencies over the years – FDA in particular – considered that or a similar study, or conducted their own studies, and nevertheless concluded BPA could be safely used to make baby products.[11]

In denying certification of multi-state classes, the issue of damages was another element the Court held could not be proven with common evidence (Doc. 754, p. 12-14). The Court determined that value of the product was not universal, and those consumers who used a product obtained more value – and suffered less in damages – than a person who disposed of the product upon immediately learning about the BPA controversy and before his or her child grew too old for it (*Id.*, p. 14).

Plaintiffs argue their post-purchase conduct is irrelevant to the measure of damages under Missouri using (again) the "benefit of the bargain" rule, which measures damages as of "the time of the transaction," *Davis v. Cleary Building Corp.*, 143 S.W.3d 659, 668 (Mo. Ct. App. 2004) (citation omitted). But Plaintiffs fail to acknowledge that

---

[11] For Plaintiffs' unjust enrichment claims, another individual inquiry will be whether Plaintiffs purchased Defendants' products *because* they thought the products were BPA-free or were manufactured with substances about which there was no scientific controversy. See Restatement (First) of Restitution § 9(1) (1937) ("A person who has conferred a benefit upon another because of a mistake . . . is entitled to restitution only if the mistake caused the conferring of the benefit.") (cited in *Petrie v. LeVan*, 799 S.W.2d 632, 635 (Mo. Ct. App. 1990). *Petrie*'s citation to § 9(1) was noted in *Kubley v. Brooks*, 141 S.W.3d 21, 32 (Mo. 2004).

10

the "benefit of the bargain" rule is not the sole measure of damages for fraud-related claims. "[T]he use of other measures of damages may be permitted where the peculiar circumstances of the fraud make benefit-of-the-bargain damages an inadequate or inappropriate measure." *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1015-16 (8th Cir. 2008) (citations omitted). Similarly, for breach of warranty, the measure of damages is the difference between value of goods accepted and the value as warranted "unless special circumstances show proximate damages of a different amount." Mo. Ann. Stat. § 400.2-714(2). The Court holds that in the circumstances of this case, where the only cognizable injury is the diminished use of a product, the extent of a consumers' use is relevant to the issue of damages under Missouri law.[12]

Plaintiffs also argue that, for their unjust enrichment claims, the issue of damages can be shown with common evidence. They assert that, if liability is shown, "it would be unjust for Defendants to retain the *entire* benefit" (emphasis added). But "[t]he measure of recovery in a quasi-contractual action is *not the actual amount of the enrichment*, but the amount of the enrichment that, as between the two parties, would be unjust for one party to retain." *Pitman v. City of Columbia*, 309 S.W.3d 395, 403 (Mo. Ct. App. 2010) (citations omitted; emphasis added). Thus, to the extent Plaintiffs suggest they will be able to establish damages simply by proving the amount of Defendants' enrichment, they are mistaken.

The Court also notes that certain elements of Plaintiffs' implied warranty claims cannot be proven with common evidence. With respect to the third element of that claim – that the plaintiff used the product (MAI 25.08) – footnote 4 to MAI 25.08 states the element should be omitted "if plaintiff learns that the goods are unfit by means other than use, such as by an initial inspection." Regardless whether each member of

---

[12] Plaintiffs counter that Missouri law requires any benefit a plaintiff obtains from an otherwise-fraudulent transaction should inure to him or her. Even if true, that does not mean the plaintiff should reap a windfall, which is what would happen here if a consumer who obtained extensive use of one of Defendants' products before learning about BPA could recover the full purchase price s/he paid for the product.

11

Plaintiffs' proposed class learned of the alleged unfitness of Defendants' products through use or other means, this can only be answered with individual proof. And as for Plaintiffs' provision of notice to Defendants (the fourth element in MAI 25.08), Plaintiffs assert *they* provided notice with their November 26, 2008, demand letter, but this does not prove the element of notice for the remaining class members. Plaintiffs argue they can satisfy this element by showing Defendants' constructive notice of the alleged defect, but the case they cite for this proposition involves Landlord-Tenant law, not the implied warranty of merchantability. Individual proof will be needed to establish notice was provided by the remaining class members.[13]

In conclusion, the principal common issues under Missouri law for Plaintiffs' claims are the nature and content of any particular Defendants' disclosures and the fact that Defendants' products contained BPA. These common issues do not predominate over the individual issues of fact, which principally consist of whether Plaintiffs' purchased the relevant products, the content of the scientific controversy that Plaintiffs allege should have been disclosed and Defendants' awareness of it, and damages. Coupled with these individual issues is another issue that weighs against class certification: the applicability of a statute of limitations defense to each class member's claim. Plaintiffs do not dispute that some class members claims will be time-barred; they simply argue that the existence of a meritorious defense does not per se preclude certification. While true, a limitations defense (like the issue of damages) presents individual inquiries that "have to be compared to the common issues to determine whether the common issues predominate over the individual issues" (Doc. 754, p. 13). The Court concludes predominance is not met.

---

[13] Even if the Court considered the filing of lawsuits as the required "notice," Plaintiffs still would be required to show the notice was given within a reasonable time, and this would be an individualized inquiry.

*(2) Superiority*

"The most compelling rationale for finding superiority in a class action is whether the action is a negative value suit." *In re Baycol Products Litigation*, 218 F.R.D. 197, 210 (D. Minn. 2003) (citation omitted). But, as Defendants note, Plaintiffs' individual MMPA claims may entitle them to an award of attorney fees if they prevail (Doc. 789, p. 64). The disincentive for pursuing a negative value suit is at least mitigated by the availability of this remedy.

The existence of numerous individual inquiries also weighs against a finding of superiority: "A 'suit could become unmanageable and little value would be gained in proceeding as a class action . . . if significant individual issues were to arise consistently.'" *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005) (citation omitted); *see* 1 McLaughlin on Class Actions § 5:56 (8th ed.) ("The individual inquiries required to ferret out those who do have claims from those who do not defeats predominance and would make a class action unmanageable" (footnote omitted)).

And a major manageability concern for the Court is how to determine who is in the class. Plaintiffs cite *Tchoboian v. Parking Concepts, Inc.*, No. SACV 09-422 JVS (ANx), 2009 WL 2169883, at *5 (C.D. Cal. July 16, 2009), in which the court "imagine[d] methods of identifying the class members, including publishing a notice of the action and allowing class members to come forward." But "com[ing] forward" and identifying himself or herself does not prove a person is in the class. A plaintiff in a typical case is not allowed to establish an element of a defendant's liability merely by completing an affidavit swearing the element is satisfied, and this should be no different for a class action. *See* 28 U.S.C.A. § 2072(b) (stating procedural rules "shall not abridge, enlarge or modify any substantive right"). Plaintiffs' proposed class extends back nearly a decade, and Defendants would be entitled to cross-examine each and every alleged class member regarding his or her memory. *Cf. Arch v. American Tobacco Co., Inc.*, 175 F.R.D. 469, 488 (E.D. Pa. 1997) ("[E]ven if the questionnaire was used to determine nicotine dependence, defendants would be permitted to cross-examine each and every class member as to their alleged dependence.") And in arguing that

13

numerosity is met, Plaintiffs assert Defendants sold millions of BPA baby products on a nationwide basis, so handling Missouri purchasers' claims individually could easily involve tens of thousands of proceedings, an enormous undertaking.

Plaintiffs further assert that "Defendants keep records of which retailers were selling their BPA products and therefore these retailers can identify Class members" (Doc. 806, p. 16). Plaintiffs present nothing that proves or even suggests retailers have the records to identify all individuals who in Missouri purchased Defendants' baby products containing BPA. But even if they did, and even if records of online purchases could be used to identify purchasers as Plaintiffs also suggest, there is also the issue of refunds: Plaintiffs' proposed class expressly excludes those individuals who received them. Determining whether a class member received a refund would be yet another individual inquiry.[14]

The desirability of concentrating the litigation in this particular forum is another factor that weighs against certification. Plaintiffs contend litigation here is desirable because it avoids inconsistent outcomes. But concentrating litigation in this forum will require some class members to travel from several hours away to testify for very little gain, suggesting in all probability few would want to take the opportunity to do so, when they would otherwise be able to litigate their own suit in their county of residence. This fact makes concentrating litigation in this Court less desirable. The Court concludes a class action is not a superior method of adjudicating this controversy.

*C. Rule 23(c)(4) Issue Certification*

In the Court's order denying certification of multi-state classes, the Court identified the following questions as common to the proposed class:

---

[14] As the Court did in its previous certification order, the Court rejects Defendants' argument that the mere existence of a refund policy destroys superiority (Doc. 754, p. 17 n.12).

14

• The nature and content of any particular Defendant's advertising and other disclosures;

• Each Defendant's knowledge, over time, about the science regarding BPA;

• The fact that certain products contained BPA; and

• The status of scientific knowledge (i.e., the particulars of the scientific debate) over time.

(Doc. 754, p. 11).

Plaintiffs now move for certification of these issues under Rule 23(c)(4), which states, "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Plaintiffs propose to try these issues to a jury, with the jury's findings apparently binding in all subsequent individual trials brought by consumers nationwide who purchased the defendants' baby products made with BPA.[15]

Defendants contend Plaintiffs' motion is untimely and that Plaintiffs are "requesting multi-state class certification on alternative grounds." Plaintiffs counter their motion is not untimely and that it "naturally flows" from the Court's identification of the four above issues as "common." Technically, Defendants have the better argument, but the Court would not deny Plaintiffs' motion merely for untimeliness (where no prejudice was shown) if the motion otherwise had merit. Plaintiffs' motion does not have merit.

There is a conflict of authority whether a class can be certified under Rule 23(c)(4) even after the Court conducts the typical analysis and determines Rule 23(b) is not satisfied. *See St. Jude*, 522 F.3d at 841. The Eighth Circuit has not decided the issue. *See id.* For those courts that approve of the practice, even they "have declined to certify such classes where the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation." *Id.* (citations omitted).

---

[15] The Court uses "apparently" here because Plaintiffs did not clearly state who was to be included in the class. The Court's best guess is that Plaintiffs intend the class members to be the same as proposed in their multi-state classes.

15

Issue certification would do little to increase the efficiency of this litigation. In this case, key questions regarding liability, such as consumers' knowledge of BPA before purchasing products and their extent of using the products, will be left unanswered even after a trial on the four issues above. The Court also questions whether a jury's findings would eliminate the need for subsequent juries to hear evidence on these issues. Whether particular information is material will be affected by surrounding available information. And what precise questions will the jury answer? Even if the jury finds a defendant had "knowledge" of the scientific debate over time, that in itself proves little. Suppose the jury is asked narrower questions – for example, whether the defendant had knowledge of a specific study. Even then, that would not necessarily prove the defendant knew the methods or analysis undertaken in the study, or the exact conclusions reached. With more specificity, the verdict form becomes increasingly complex.[16] This would not be superior to the alternatives. And because the parties undoubtedly would dispute the scope of the questions the jury would answer and their preclusive effect, Plaintiffs' proposal would more likely increase the litigated issues in this case, rather than reduce them.[17] The prospect of these and other problems complicating this action renders Plaintiffs' proposal unacceptable. The Court denies Plaintiffs' motion for certification under Rule 23(c)(4).

---

[16] This complexity could also impact the class notices that would be sent out, which are supposed to "clearly and concisely state" the class issues, among other things. Fed. R. Civ. P. 23(c)(2)(B); *see In re Conagra Peanut Butter Products Liability Litigation*, 251 F.R.D. 689, 701 (N.D. Ga. 2008) ("How can notice be given to the class that fairly apprises it of what is to be determined in a common issues trial?")

[17] Plaintiffs cite *Engle v. Liggett Group, Inc.*, 945 So.2d 1246, 1254-55 (Fla. 2006), which held that jury's findings on common issues should be given res judicata effect in class members' subsequent individual damages actions. But this Court cannot order a subsequent court to give preclusive effect to this Court's rulings or a jury's findings; that decision is the subsequent court's to make. And since the jury's findings would not constitute a final judgment on the merits, the applicability of issue preclusion would likely be litigated, injecting an additional issue in this case.

III.  CONCLUSION

Plaintiffs' motions for class certification are denied.

IT IS SO ORDERED.

                                                      /s/ Ortrie D. Smith
                                                     ORTRIE D. SMITH, SENIOR JUDGE
DATE: December 22, 2011                UNITED STATES DISTRICT COURT